

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

INNOVATIVE LEGAL MARKETING, LLC,

      Plaintiff,

v.

      Action No. 2:10cv580

MARKET MASTERS-LEGAL, A RESONANCE
COMPANY,

      Defendant.

## UNITED STATES MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on cross-motions for summary judgment (ECF Nos. 39, 42).  Both motions have been referred to the undersigned United States Magistrate Judge for a recommended disposition pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C) and Rule 72(b) of the Federal Rules of Civil Procedure, as well as Rule 72 of the Rules of the United States District Court for the Eastern District of Virginia, by order of reference entered September 21, 2011 (ECF No. 62).  For the reasons stated herein, the Court recommends that the plaintiff's motion be DENIED and the defendant's motion be GRANTED in part and DENIED in part.

### I. BACKGROUND

In this action, plaintiff Innovative Legal Marketing, LLC ("ILM") and defendant Market Masters-Legal, A Resonance Company ("MML") assert various copyright and trademark claims against one another.

MML is a Massachusetts corporation, formed in 1995 and head-
quartered in Northampton, Massachusetts.  MML is in the legal mar-
keting business.  It produces television advertisements for lawyers
and law firms in markets throughout the country, and it negotiates
and manages the placement of these advertisements on television
stations within its clients' media markets.[1]  Over the years, MML
has developed a large inventory of copyrighted television adver-
tisements for its clients, and it has developed and registered sev-
eral service marks for legal and advertising services.[2]  MML enters
into licensing and marketing agreements with its lawyer and law
firm clients, pursuant to which it produces customized television
advertisements using celebrity spokespersons (e.g., Robert Vaughn
or William Shatner), as well as non-celebrity spokespersons.  While
customized, these advertisements are typically drawn from MML's
pre-existing inventory of television advertisements, modified to
identify the particular lawyer or law firm licensee.  Some of the
advertisements present a toll-free vanity number (e.g., 1-800-WIN-
WIN-1) which is apparently set up to refer calls to the appropriate

---

[1] MML also prepares print advertisements for its clients, but
the present dispute is limited to MML's and ILM's competing televi-
sion advertisements.

[2] The copyrights and trademarks are actually registered in the
name of an affiliate of MML, Commercial Pro, Inc. ("Commercial
Pro"), also a Massachusetts corporation, formed in 2001.  ILM con-
tests MML's copyright and trademark claims on the ground that Com-
mercial Pro, rather than MML, is the owner or registrant of the
copyright and service mark at issue in this case.  The Court ad-
dresses this distinction below.  For background purposes, however,
the distinction is immaterial.

lawyer or law firm licensee for the caller's geographic area, while others simply present the licensee's own telephone number.  Many of the advertisements apparently conclude with one of MML's trade-marked slogans or taglines (e.g., "Tell Them You Mean Business" or "You Deserve Justice, Now Demand It").[3]

In March 2006, MML entered into a licensing and servicing agreement with the New York law firm of Parker & Waichman, LLP. Parker & Waichman, LLP was subsequently re-formed as Parker Waichman Alonso, LLP ("PWA"), and MML entered into a licensing and servicing agreement with PWA on August 15, 2007.[4]  Pursuant to these licensing and servicing agreements, MML produced at least 57 customized television advertisements for PWA and its predecessor between March 2006 and October 2009 for broadcast on New York City area television stations.  This advertising campaign began with customized versions of television advertisements taken from MML's existing inventory of commercials, but MML continued to develop new television advertisements over the course of its relationship with PWA, including at least one commercial, the so-called "Big Case" commercial, that incorporated material suggested by Jerry Parker, a partner at PWA.

---

[3] The Court notes that the "You Deserve Justice, Now Demand It" tagline was not registered with the United States Patent and Trademark Office as a service mark until February 2011.
[4] The Court notes that PWA has once again been re-formed or renamed, and it is now known as Parker Waichman LLP.

At some point in 2008, Parker conceived the idea of a market-ing strategy centered on the words "Big Case" and a vanity tele-phone number using those same words, 1-888-BIG-CASE.  In support of this marketing strategy, PWA secured the toll-free telephone number 1-888-244-2273, which corresponds to the vanity number 1-888-BIG-CASE, and the "bigcase.com" internet domain name.  Sometime in late December 2008 or early January 2009, Parker had a conversation with Rick Heideman of MML regarding preparation of a television commer-cial using Parker's "Big Case" idea, orally conveying his vision for a "Big Case" commercial, including specific lines he thought the spokesperson should recite.

On January 23, 2009, Heideman e-mailed a sample copy of a tel-evision commercial, titled "BIG CASE," to PWA.  This sample commer-cial included the 1-888-BIG-CASE vanity number and the bigcase.com domain name.  Upon reviewing it, Jerry Parker was "very upset" be-cause the commercial did not follow the specific directions he had given to Rick Heideman verbally about a month earlier.  Parker called Heideman immediately to complain.  Heideman asked Parker to send him an e-mail with the instructions Parker had previously giv-en in their spoken conversation.

On January 24, 2009, Parker sent an e-mail to Heideman, the substance of which follows:

Does this deliver the message?

-------------------------------------------------------

- 4 -

Were you in an auto accident?

Injured due to someone else's fault?

You deserve the maximum compensation for your injuries

Don't take chances.

Your BIG CASE requires attorneys who handle BIG CASES — **EVERY-SINGLE-DAY**

Call 1-888-BIG CASE

Call 1-8-8-8-BIG - CASE RIGHT NOW

Am. Compl. Ex. A, ECF No. 7 attach. 1.[5]

On or about February 20, 2009, MML provided PWA with a video of the first BIG CASE commercial.  A video copy of this commercial —registered with the United States Copyright Office as "Big Case. 30" / "#17479"—was submitted for the record as Exhibit 17 to MML's memorandum in support of its motion for partial summary judgment. ECF No. 40 attach. 17.  A copy of the spoken words with black-and-white still images of the video component is attached as Exhibit 15 to MML's memorandum in support.  ECF No. 40 attach. 15.  The spoken words of the commercial are reproduced below, with on-screen graphics on the left and spoken words on the right:

---

[5] The facts regarding Parker's development of the "Big Case" marketing strategy and his conversations with Rick Heideman are taken from Parker's Declaration, which is largely undisputed.  ECF No. 43 attach 23.  The facts regarding the related e-mail correspondence are taken from Exhibit A to the Amended Complaint.  ECF No. 7 attach. 1.  ILM has submitted an abridged version of the same e-mail thread as an exhibit to its memorandum in support of its motion for partial summary judgment, ECF No. 43 attach. 3, but the Court has relied on the more complete version attached to the Amended Complaint.  See Fed. R. Civ. P. 56(c)(3).

| | |
|---|---|
| [Words only, on a black background, with PWA name and logo, 1-888-BIG-CASE, and www.bigcase.com at bottom of screen:] | [Voiceover:] |
| Were You In An Auto Acci-dent? | Were you in an auto acci-dent? |
| Injured Due To Someone Else's Fault? | Injured due to someone else's fault? |
| You Deserve The Maximum Compensation For Your In-juries | You deserve the maximum compensation for your in-juries. |
| If You Have A BIG CASE | If you have a big case, |
| You Need A Law Firm That Handles BIG CASES | you need a law firm which handles big cases. |
| BIG CASES | Parker Waichman handles big cases |
| EVERY SINGLE DAY | Every. Single. Day. |
| [gray splash screen, with PWA name and logo, www.bigcase.com, 1-888-BIG-CASE, and 1-888-244-2273] | [Gong Sound Effect] |
| [Robert Vaughn, with PWA name and logo, 1-888-BIG-CASE, and www.bigcase.com at bottom of screen and ALL ACCIDENTS and FREE CONSULTATION to his left] | [Robert Vaughn:] If you've been injured in an acci-dent, you deserve justice—now demand it. |
| [Words only, on a black background, with BIG CAS-ES prominently displayed above www.bigcase.com, FREE CONSULTATION, PWA name and logo, 1-888-BIG-CASE, and 1-888-244-2273] | Call Parker Waichman at 1-888-big-case.<br><br>[Voiceover:] That's one triple eight big case. One triple eight big case. Parker Waichman. |
| [Robert Vaughn, with PWA | [Robert Vaughn:] |

- 6 -

| | |
|---|---|
| name and logo, 1-888-BIG-CASE, and www.bigcase.com at bottom of screen and ALL ACCIDENTS and FREE CONSULTATION to his left] | Right now. |

See Def.'s Ex. 17 (emphasis added to identify words emphasized by on-screen graphics), ECF No. 40 attach. 17. In the penultimate screen, the words "BIG CASE" flash and the letters of the vanity number are briefly highlighted as a telephone touch-tone is heard. This BIG CASE commercial and an abbreviated 15-second version began running on New York television stations in March 2009. Copyrights for both versions of the BIG CASE commercial were registered to MML affiliate Commercial Pro on July 31, 2009, with first publication dates of February 9, 2009, and February 12, 2009, respectively.

In October 2009, PWA terminated its licensing and servicing agreement with MML. That same month, ILM was formed by Brien Johnson, and ILM became PWA's advertising agency. ILM is a Virginia corporation, headquartered in Virginia Beach, Virginia. It is also in the legal marketing business. Like MML, it produces print and television advertisements for lawyers and law firms in various markets, and it negotiates and manages the placement of these television advertisements on television stations within its clients' media markets.

Shortly thereafter, ILM produced a new version of the BIG CASE television commercial. The ILM BIG CASE commercial used Corbin Bernsen as its spokesperson in place of Robert Vaughn. The spoken

words of the commercial are reproduced below, with on-screen
graphics on the left and spoken words on the right:

| | |
|---|---|
| [Words only, on a black background with PWA name and logo, 1-888-BIG-CASE, and www.bigcase.com at bottom of screen:] | [Corbin Bernsen:] |
| Were You In An Auto Accident? | Were you in an auto accident? |
| Injured Due To Someone Else's Fault? | Injured due to someone else's fault? |
| [Darkened background image of a gavel] | |
| You Deserve The Maximum Compensation For Your Injuries | You deserve the maximum compensation for your injuries. |
| [Black background, with only the words BIG CASE] | If you have a big case, you need a law firm that handles big cases. |
| [Darkened background image of an elaborate stone cornice with the word JUSTICE engraved in it, PWA name and address at bottom of the screen:] | |
| BIG CASES | Parker Waichman handles big cases |
| EVERY SINGLE DAY | Every. Single. Day. |
| [Corbin Bernsen, with PWA name and logo, 1-888-BIG-CASE, and 1-888-244-2273 at bottom of screen, and ALL ACCIDENTS, FREE CONSULTATION, and www.bigcase.com to his left] | [Slamming Sound Effect] |
| | If you've been injured in an accident, you deserve justice—now demand it. |
| [Words only, on a black | Call Parker Waichman. |

| background, with BIG CAS-<br>ES prominently displayed<br>above    www.bigcase.com,<br>FREE    CONSULTATION,    PWA<br>name and logo, 1-888-BIG-<br>CASE, and 1-888-244-2273] | 888-big-case.<br><br>Right now.    That's one<br>triple eight big case.<br>Right now. |

See Def.'s Ex. 17 (emphasis added to identify words emphasized by

on-screen graphics), ECF No. 40 attach. 17.   In the final screen,

the PWA name and logo glimmer and the letters of the vanity number

are briefly highlighted as a telephone touch-tone is heard.

ILM's BIG CASE commercial was first broadcast in the New York

market in November 2009.   On December 24, 2009, Ed Olender of MML

wrote to PWA to voice MML's objection to PWA's use of the ILM BIG

CASE commercial, noting that it used certain proprietary elements

from MML's copyrighted works, and that PWA was prohibited under the

licensing and servicing agreement from using commercials similar to

those previously produced for PWA by MML.   On January 27, 2010,

having received no response, Rick Heideman of MML sent a follow-up

e-mail to another PWA attorney.   On February 12, 2010, counsel for

PWA wrote a letter to Olender disclaiming any similarity and de-

clining to modify PWA's television advertisements.

In June 2010, MML filed a breach of contract action against

PWA in Massachusetts state court.   PWA removed the action to feder-

al court.   On July 22, 2010, MML filed an amended complaint in the

Massachusetts action, adding ILM as a defendant, and adding a copy-

right infringement claim against both PWA and ILM.   On July 23,

- 9 -

2010, a Massachusetts federal district court issued a preliminary injunction against PWA prohibiting it from running advertisements containing certain words or features similar to those used in the commercials previously produced for PWA by MML.

On October 27, 2010, PWA and ILM executed a Trademark Assignment instrument, by which PWA assigned to ILM its interest in the registered service marks BIGCASE, Registration No. 3,766,911, BIG-CASE.COM, Registration No. 3,763,120, and 1-888-BIG-CASE, Registration No. 3,863,509.  These marks had previously been registered by the United States Patent and Trademark Office ("PTO") on March 30, 2010, March 23, 2010, and October 19, 2010, respectively.  Each of these three marks was registered on the principal register with a February 2009 date of first use in commerce.

On November 18, 2010, the United States Copyright Office issued a certificate to ILM registering copyright in the "BIGCASE Script," comprised of the substantive text of Jerry Parker's January 24, 2009 e-mail.  The copyright was registered with a first publication date of January 24, 2009.  PWA had previously assigned its copyright interest to ILM pursuant to a written agreement.

On November 23, 2010, ILM filed its complaint against MML in this action, asserting claims of copyright infringement, trademark infringement, false designation, and unfair competition under the Lanham Act, and common law infringement and unfair competition.

ECF No. 1.  ILM filed its Amended Complaint on December 20, 2010. ECF No. 7.

On January 20, 2011, the Massachusetts federal district court dismissed ILM from that case for lack of personal jurisdiction. MML's breach of contract claim against PWA has since been dismissed on preemption grounds.  A trial on MML's copyright claim against PWA is currently scheduled to take place on February 21, 2012.

On February 1, 2011, the PTO issued a certificate to MML affiliate Commercial Pro registering the service mark YOU DESERVE JUSTICE NOW DEMAND IT, Registration No. 3,913,122.  The service mark was registered on the principal register with a date of first use in commerce of January 30, 2006.

MML filed its Amended Answer and Amended Counterclaim against ILM on March 7, 2011, asserting claims of copyright infringement, trademark infringement, false designation, and unfair competition under the Lanham Act, and common law infringement and unfair competition.  ECF No. 22.  MML filed a motion for partial summary judgment on August 26, 2011.  ECF No. 39.  ILM filed its own motion for partial summary judgment on September 1, 2011.  ECF No. 42.

The motions were referred to the undersigned for a recommended disposition by order of reference on September 21, 2011.  ECF No. 62.  A hearing on the cross-motions for summary judgment was held on October 26, 2011.  Richard H. Ottinger, Esq., Dustin M. Paul, Esq., and Jane Tucker, Esq., appeared on behalf of the plaintiff.

Kathryn Ann O'Leary, Esq., and Kristan Boyd Burch, Esq., appeared on behalf of the defendant.  The official court reporter was Sharon Borden.

## II. MOTION FOR SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is "material" only if it might affect the outcome of the case.  Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  A dispute of material fact is "genuine" only if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." Id.  In deciding a summary judgment motion, the Court must view the record as a whole and in the light most favorable to the nonmovant.  Terry's Floor Fashions, Inc. v. Burlington Indus., Inc., 763 F.2d 604, 610 (4th Cir. 1985).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the movant makes such a showing, the nonmovant must set forth specific facts, supported by the record, demonstrating that "the evidence presents a sufficient disagreement to require submission to the jury." Anderson, 477 U.S. at 251-52.

When confronted with cross-motions for summary judgment, "the standards upon which the court evaluates the motions for summary judgment do not change." Taft Broad. Co. v. United States, 929 F.2d 240, 248 (6th Cir. 1991). "[T]he Court must review each motion separately on its own merits 'to determine whether either of the parties deserves judgment as a matter of law.'" Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (quoting Philip Morris Inc. v. Harshbarger, 122 F.3d 58, 62 n.4 (1st Cir. 1977)). The mere fact that both sides have moved for summary judgment does not establish that no genuine dispute of material fact exists, thus requiring that judgment be granted to one side or the other. See Worldwide Rights Ltd. P'ship v. Combe Inc., 955 F.2d 242, 244 (4th Cir. 1992); Am. Fid. & Cas. Co. v. London & Edinburgh Ins. Co., 354 F.2d 214, 216 (4th Cir. 1965). Even if the basic facts are not in dispute, the parties may nevertheless disagree as to the inferences that reasonably may be drawn from them, in which case summary judgment may be inappropriate, necessitating the denial of both motions. See Am. Fid. & Cas. Co., 354 F.2d at 216.

### III. **ANALYSIS**

#### A. **Copyright Infringement**

To establish a claim for copyright infringement, the plaintiff must prove: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991);

see also Bouchat v. Baltimore Ravens, Inc., 241 F.3d 350, 353 (4th Cir. 2000); Eaton v. Nat'l Broad. Co., 972 F. Supp. 1019, 1023 (E.D. Va. 1997).

"Only where the copyright holder proves copying is infringement established.  And copying can be established either directly or indirectly."  Ganz Bros. Toys v. Midwest Imps. of Cannon Falls, Inc., 834 F. Supp. 896, 899 (E.D. Va. 1993).  "Where direct evidence of copying is lacking, plaintiff may prove copying by circumstantial evidence in the form of proof that the alleged infringer had access to the work and that the supposed copy is substantially similar to the author's original work.  Bouchat, 241 F.3d at 353-54; see also Eaton, 972 F. Supp. at 1023.

"Access is established when the plaintiff shows that the defendant had an opportunity to view or copy the plaintiff's work."  Ganz, 834 F. Supp. at 899.  Proof of substantial similarity involves a two-step analysis:

> First, the court must determine whether the two works are "extrinsically similar because they contain substantially similar ideas that are subject to copyright protection."  And second, the court must ask whether the works are "intrinsically similar" in the sense that they express those ideas in a substantially similar manner from the perspective of the intended audience of the work.  The notion of intrinsic similarity can be a slippery one because it requires the court to inquire into "the 'total concept and feel' of the works," but only as seen through the eyes of the ordinary observer.

Lyons P'ship, L.P. v. Morris Costumes, Inc., 243 F.3d 789, 801 (4th Cir. 2001) (quoting Towler v. Sayles, 76 F.3d 579, 583-84 (4th Cir. 1996), and Dawson v. Hinshaw Music, Inc., 905 F.2d 731, 733 (4th Cir. 1990)); see also Eaton, 972 F. Supp. at 1026; X-IT Prods., L.L.C. v. Walter Kidde Portable Equip., Inc., 155 F. Supp. 2d 577, 612 (E.D. Va. 2001).

> The issues of copyright ownership, copyright valid-
> ity, direct copying, and access to the copyrighted
> material are amenable to conventional summary judg-
> ment analysis.  Simply put, this means ascertaining
> first whether any facts material to these issues
> remain in dispute and, if not, proceeding then by
> way of deductive reasoning to arrive at a result by
> applying the pertinent law to the facts.  But this
> straightforward, familiar summary judgment process
> does not apply to the substantial similarity issue.
> That issue, by contrast, demands not deductive rea-
> soning, but a perceptual judgment.  In essence, the
> infringing object must be viewed or juxtaposed
> against the copyrighted object and then an essen-
> tially aesthetic judgment must be made as to wheth-
> er reasonable jurors would not differ in concluding
> that the overall appearance of the objects are sub-
> stantially similar.

Ganz, 834 F. Supp. at 899-900.  Typically, whether the two works are substantially similar is "largely a matter of fact and thus not appropriate for the Court's disposition on cross-motions for sum-mary judgment." See X-IT Prods., 155 F. Supp. 2d at 614.

### 1. MML's BIG CASE Commercial

In Count I of its Counterclaim against ILM, MML asserts that ILM's BIG CASE commercial, featuring Corbin Bernsen, infringes on MML's copyright in its BIG CASE 30-second commercial, featuring

Robert Vaughn. Both parties move for summary judgment with respect to this claim.

### a. Ownership of a Valid Copyright

To prove ownership of a valid copyright, "the plaintiff must show that the work is original and that the applicable statutory formalities were followed." Harvester, Inc. v. Rule Joy Trammell + Rubio, LLC, 716 F. Supp. 2d 428, 434-35 (E.D. Va. 2010) (quoting Montgomery v. Noga, 168 F.3d 1282, 1289 (11th Cir. 1999)). A certificate of copyright registration "made before or within five years after publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c). Nevertheless, this statutory presumption of validity and ownership "is not an insurmountable one, and merely shifts to the defendant the burden to prove the invalidity of the plaintiff's copyrights." Harvester, 716 F. Supp. 2d at 435 (quoting Masquerade Novelty, Inc. v. Unique Indus., Inc., 912 F.2d 663, 668 (3d Cir. 1990)).

The certificates of copyright registration in the record establish that Commercial Pro owns the copyright to the BIG CASE commercials produced by MML. Def.'s Exs. 12, 14, ECF No. 40 attachs. 12, 14. It is undisputed that MML has an exclusive worldwide license to all Commercial Pro copyrights and trademarks, including copyright in the two BIG CASE commercials created by MML. See Def.'s Ex. 1, ECF No. 40 attach. 1. Accordingly, MML has estab-

lished its "legal or beneficial owner[ship] of an exclusive right under copyright." See 17 U.S.C. § 501(b); Eden Toys, Inc. v. Floralee Undergarment Co., 697 F.2d 27, 32 (2d Cir. 1982).

ILM contends nevertheless that MML does not own a valid copyright in the BIG CASE commercials because they are not sufficiently original. ILM argues that MML's BIG CASE commercials are derivative works,[6] with many of the signature elements of these commercials tracing their origins to commercials created by Salamone and

---

[6] A "derivative work" is "a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgment, condensation, or any other form in which a work may be recast, transformed, or adapted." 17 U.S.C. § 101. This includes "[a] work consisting of editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship." Id. Copyright in a derivative work "extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work, and does not imply any exclusive right in the preexisting material." Id. § 103(b).

The material contributed by the author of the derivative work must be sufficiently original to receive copyright protection. See M. Kramer Mfg. Co. v. Andrews, 783 F.2d 421, 438 (4th Cir. 1986). But "the standard for originality of a . . . derivative work is 'minimal' and of 'a low threshold,' and is 'modest at best.'" Id. (citations omitted). This requirement is satisfied if the derivative work has "a faint trace of 'originality' and if it provides a 'distinguishable variation.'" Id. (citations omitted). In other words, a derivative work is sufficiently original to be copyrightable if the "derivative work contains a 'nontrivial' variation from the preexisting work 'sufficient to render the derivative work distinguishable from [the] prior work in any meaningful manner.'" Schrock v. Learning Curve Int'l, Inc., 586 F.3d 513, 520 (7th Cir. 2009) (quoting 1 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 3.03[A] (2009)).

"[T]he copyright in a derivative work is thin, extending only to the incremental original expression contributed by the author of the derivative work." Id. at 521 (citing 17 U.S.C. § 103(b)).

Olender years before the formation of MML and Commercial Pro, and that all other elements of the BIG CASE commercials are unprotectable scenes a faire, leaving no original material upon which a valid copyright might be based.

First, MML has submitted a written assignment of Salamone's and Olender's copyright and trademark interests, memorializing the prior oral assignment of their rights to MML and Commercial Pro. Def.'s Ex. 20, ECF No. 53 attach. 3. "[A]n oral assignment of copyright is an effective assignment if the oral assignment is subsequently memorialized in a written document." X-IT Prods., 155 F. Supp. 2d at 603. "Moreover, the written memorialization relates back to the date of the oral assignment such that the assignee takes his interest in the copyright as of the time of the oral assignment." Id. at 604. "Finally, . . . when there is no dispute between the original copyright owner and his licensee or assignee, 'it would be anomalous to permit a third-party infringer to invoke this [writing] provision against the licensee.'" Id. (quoting Eden Toys, 697 F.2d at 37) (alteration in original). Registration of copyright for the BIG CASE commercials is sufficient to allow an infringement claim based on the copying of material, either newly added or derived from prior works by MML, Commercial Pro, and their principals, Salamone and Olender. See In re Indep. Servs. Orgs. Antitrust Litig., 964 F. Supp. 1469, 1473 (D. Kan. 1997).

Second, the presence of material properly characterized as scenes a faire does not render copyright in the entire work invalid; rather, it merely limits the scope of protection against infringement, as only original elements of the work are protected by copyright. See generally Reed-Union Corp. v. Turtle Wax, Inc., 77 F.3d 909, 914 (7th Cir. 1996) (discussing the difference between the scenes a faire doctrine and copyright invalidity); Bucklew v. Hawkins, Ash, Baptie & Co, 329 F.3d 923, 929 (7th Cir. 2003) (same). Even if non-copyrightable elements, such as scenes a faire, are predominant, so long as they are selected, coordinated, and arranged in a manner that displays "some minimal level of creativity," the work as a whole is sufficiently original to be copyrightable. See Feist, 499 U.S. at 358; Bouchat, 241 F.3d at 356; X-IT Prods., 155 F. Supp. 2d at 609.

Accordingly, based on undisputed facts, MML has established ownership of a valid copyright in the BIG CASE commercials it produced for PWA.

### b. Copying of Original Elements

The evidence of record clearly establishes that ILM had the opportunity to view MML's BIG CASE commercial. In an August 1, 2011 deposition, Randy Dinzler, producer of the ILM BIG CASE commercial, admitted to having viewed a version of the MML BIG CASE commercial customized for MML's Norfolk-area licensee, Kalfus & Nachman, and another variant of the "cookie cutter" commercial for

a different law firm while he was traveling, prior to producing the ILM BIG CASE commercial. Def.'s Ex. 16, ECF No. 40 attach. 16. ILM's access to MML's BIG CASE commercial has been clearly established.

Determining substantial similarity also requires the Court to consider, in turn, whether the works at issue are "extrinsically" similar and "intrinsically" similar. "The 'extrinsic' evaluation should assess the similarity between the two works' objective elements, such as plot, theme, characters, setting, pace, mood, and dialogue. . . . The 'intrinsic' evaluation should appraise whether the 'total concept and feel' of the disputed work resembles that of the plaintiff's, as measured by the perception of an ordinary observer, namely, that of a television viewing person." Eaton, 972 F. Supp. at 1026.

With respect to the Court's extrinsic evaluation of the two works, it must be noted that "[w]hen we determine that a work contains both protectable and unprotectible elements, we must take care to inquire only whether 'the protectable elements, standing alone, are substantially similar.'" Williams v. Crichton, 84 F.3d 581, 588 (2d Cir. 1996) (emphasis omitted); see also Feist, 499 U.S. at 348 ("Originality remains the sine qua non of copyright; accordingly, copyright protection may extend only to those components of a work that are original to the author."); Takeall v. Pepsico, Inc., 14 F.3d 596, 1993 WL 509876, at *8 (4th Cir. Dec. 8,

1993) (per curiam table decision) ("[E]ven if a work as a whole is copyrightable, copyright protection does not extend to its component parts that are not.").

ILM first argues that that MML's BIG CASE commercial is an unauthorized derivative work, based on the BIGCASE script to which ILM holds copyright, and thus entitled to no copyright protection at all.

> To be copyrightable, a derivative work must not be infringing.  The owner of the copyright in the underlying work has the exclusive right to "prepare derivative works based upon the copyrighted work," and "it is a copyright infringement to make or sell a derivative work without a license from the owner of the copyright on the work from which the derivative work is derived."  This means the author of a derivative work must have permission to make the work from the owner of the copyright in the underlying work . . . .

Schrock v. Learning Curve Int'l, Inc., 586 F.3d 513, 522-23 (7th Cir. 2009) (quoting 17 U.S.C. § 106(2), and Bucklew, 329 F.3d at 930).  But the record establishes that MML had an implied nonexclusive license to use Jerry Parker's e-mail "script" in composing its BIG CASE commercials.

"An implied nonexclusive license, as its designation suggests, is not a written license and can be given either orally or implied from conduct."  Nelson-Salabes, Inc. v. Morningside Dev., LLC, 284 F.3d 505, 514 (4th Cir. 2002).  "Such an implied license does not transfer the ownership of a copyright; rather, it 'simply permits the use of a copyrighted work in a particular manner.'"  Id. (quot-

ing I.A.E., Inc. v. Shaver, 74 F.3d 768, 775 (7th Cir. 1996)).
"The existence of an implied nonexclusive license . . . constitutes
an affirmative defense to an allegation of copyright infringement."
Id.  "The grant of a nonexclusive license is essentially a promise
not to sue for infringement.  When such a promise is implied,
courts generally enforce it according to the rules governing quasi-
contract and contracts implied-in-fact." Thomas M. Gilbert Archi-
tects, P.C. v. Accent Builders & Developers, LLC, 377 Fed. App'x
303, 306-07 (4th Cir. 2010) (per curiam).  "The burden for proving
the existence of a license is on the purported licensee." Softech
Worldwide, LLC v. Internet Tech. Broad. Corp., 761 F. Supp. 2d 367,
375 (E.D. Va. 2011).

An implied nonexclusive license for use of an otherwise copy-
right protected work exists and is enforceable when: "(1) a person
(the licensee) requests the creation of a work, (2) the creator
(the licensor) makes that particular work and delivers it to the
licensee who requested it, and (3) the licensor intends that the
licensee copy and distribute his work." Nelson-Salabes, 284 F.3d
at 514.  In the third prong of this test, "copy and distribute"
means that "the creator of a protected work must intend that its
copyrighted [works] be used on the project for which they were cre-
ated, independent of the creator's involvement." Id. at 515.

In this case, the first two elements are clearly established.
In late December 2008 or early January 2009, Jerry Parker and Rick

Heideman discussed Parker's "Big Case" marketing idea. Heideman and MML produced a sample BIG CASE commercial and sent it to PWA for review on January 23, 2009. Parker was dissatisfied with the sample commercial and called Heideman immediately to complain. Heideman requested that Parker send him an e-mail message with his specific instructions. On January 24, 2009, Parker wrote his e-mail "script" pursuant to this request and delivered it to Heidemann.

In evaluating the test's third element when a written contract exists, the Fourth Circuit has held the applicable rule to be that: "(1) quasi-contract principles do not govern; and (2) the parties' intent 'should be ascertained, whenever possible, from the language the parties employed in the contract.'" Thomas M. Gilbert Architects, 377 Fed. App'x at 307 (quoting Virginia Elec. & Power Co. v. Norfolk S. Ry. Co., 683 S.E.2d 517, 525 (Va. 2009)).[7] "An implied

_____

[7] In the absence of a written contract, the Fourth Circuit has held that determining the putative licensor's intent requires consideration of at least three factors:

> (1) whether the parties were engaged in a short-term discrete transaction as opposed to an ongoing relationship; (2) whether the creator used written agreements providing that copyrighted materials could only be used with the creator's future involvement or express permission; and (3) whether the creator's conduct during creation or delivery of the copyrighted material indicated that the material could be used without the creator's involvement or consent.

Softech Worldwide, 761 F. Supp. 2d at 376; see also Nelson-Salabes, 284 F.3d at 516. "This list is not exhaustive; the touchstone is intent." Softech Worldwide, 761 F. Supp. 2d at 376.

license may be constructed where it is necessary to make sense of an agreement." Interferometrics, Inc. v. Lorenzini, 21 F.3d 422, 1994 WL 132061, at *6 (4th Cir. Apr. 15, 1994) (per curiam table decision) (citing De Forest Radio Tel. Co. v. United States, 273 U.S. 236, 241 (1927)).

The terms of the Licensing and Servicing Agreement (the "Agreement") between MML and PWA, dated August 15, 2007, are undisputed. Def.'s Ex. 16, ECF No. 40 attach. 16. The Agreement does not specifically address copyrights or trademarks as such, but it clearly contemplates that MML would create and own any advertisements it produced pursuant to the Agreement. The Agreement expressly provided that MML had the exclusive right to create and customize any television advertisements, and the exclusive right to place those advertisements with television stations within the licensed media market. The Agreement expressly granted PWA an exclusive right and license to use the Advertisements within a specified media market for the duration of the Agreement, implicitly reserving all other rights in the advertisement to the licensor, MML. The Agreement expressly provided that, upon termination, PWA would be prohibited from airing similar advertisements, or use the same spokespersons, anywhere in the United States. Most importantly, the Agreement permitted the client, PWA, to request customized modifications to the television advertisements, but it expressly provided that any such modifications were subject to MML's approval,

and that they were to be prepared and completed by MML exclusively. Without an implied nonexclusive license to use PWA's suggested modifications, the Agreement would make no sense, unless one construes an implied term limiting the expressly permitted customization requests to spoken requests only, which would serve no purpose. At a minimum, the Agreement granted MML an implied nonexclusive license to use any written modifications suggested by PWA to produce the requested customized advertisements. See Interferometrics, 1994 WL 132061, at *6; St. Joseph Iron Works v. Farmers Mfg. Co., 106 F.2d 294, 296 (4th Cir. 1939); see also Lulirama Ltd., Inc. v. Axcess Broad. Servs., Inc., 128 F.3d 872, 882-83 (5th Cir. 1997).

The existence of an implied nonexclusive license is further supported by the conduct of the parties. An implied license can be found where the copyright holder engages in conduct "from which [the licensee] may properly infer that the [licensor] consents to his use." De Forest Radio Tel. & Tel. Co. v. United States, 273 U.S. 236, 241 (1927). An implied license may be inferred based on silence where the copyright holder knows of the licensee's use and acquiesces in it. See Keane Dealer Servs., Inc. v. Harts, 968 F. Supp. 944, 947 (S.D.N.Y. 1997). In this case, PWA was aware that MML routinely used its inventory of existing television advertisements for licensees in multiple markets, customizing these commercials to substitute each law firm's name and contact information. Indeed, it no doubt had benefited from that same practice, and any

- 25 -

resultant cost efficiencies, during its three year relationship with MML.  Standing alone, this conduct would not support finding the existence of an implied nonexclusive license on summary judgment, but it serves to underscore the Court's finding above based on the undisputed terms of the Agreement.

The Court further notes that "an implied license is necessarily nonexclusive and revocable absent consideration."  Avtec Sys., Inc. v. Peiffer, 21 F.3d 568, 574 n.12 (4th Cir. 1994).  Conversely, an implied nonexclusive license supported by consideration is irrevocable.  Lulirama, 128 F.3d at 882; Asset Mktg. Sys., Inc. v. Gagnon, 542 F.3d 748, 757 (9th Cir. 2008).  The Agreement, including its implied nonexclusive license with respect to client-suggested modifications to MML-produced advertisements, was supported by consideration—mutual performance by both parties as set forth in the Agreement.  Accordingly, this implied nonexclusive license is irrevocable.

A final question with respect to this implied license is the scope of the license granted.  In addition to Agreement's treatment of client requests for modification as little more than suggestions—which MML had discretion to accept, decline, or adopt and further modify—the Court looks to the circumstances under which the allegedly copyrighted material was conveyed from PWA to MML.  "Implied licenses may be limited and a defendant who exceeds the scope of an implied license commits copyright infringement."  Lati-

mer v. Roaring Toyz, Inc., 601 F.3d 1224, 1235 (11th Cir. 2010).
But "an implied license will be limited to a specific use only if
that limitation is expressly conveyed when the work is delivered."
Id.; see also Gagnon, 542 F.3d at 756-57; Lighthouse Solutions, LLC
v. Connected Energy Corp., No. 03-CV-6275, 2004 WL 1811391, at *6
(W.D.N.Y. Aug. 13, 2004).  In his January 24, 2009, e-mail message,
Parker conveyed his proposed "script" for the BIG CASE television
advertisement.  That e-mail message contained no language whatsoev-
er to limit the scope of MML's use of the "script," whether in pro-
ducing future advertisements for PWA or any other MML client.  See
Am. Compl. Ex. A, ECF No. 7 attach. 1.[8]  Indeed, the only text that
accompanied the "script" were Parker's signature block and the
question: "Does this deliver the message?"  The record contains no
evidence to suggest that Parker or PWA conveyed express limitations
by any other means of communication at the time.

Accordingly, based on undisputed facts, the Court finds that
the Agreement contained an unlimited irrevocable implied nonexclu-
sive license with respect to the BIGCASE script.  Any derivative
use of the BIGCASE script by MML was therefore authorized.

In the alternative, ILM argues that once any non-original ele-
ments, namely those derivative of prior works and unprotectable
scenes a faire, are removed from the MML BIG CASE commercial, what
little that remains is not substantially similar to the ILM BIG

---

[8] See supra note 5.

CASE commercial.   Specifically, ILM contends that nearly all the elements of the MML BIG CASE commercial are derived from works created prior to Commercial Pro's formation, they are derived from Jerry Parker's BIGCASE script, or they constitute unprotectable scenes a faire.

As discussed above, MML has submitted a written assignment of Salamone's and Olender's copyright and trademark interests, memorializing the prior oral assignment of their rights to MML and Commercial Pro.  Def.'s Ex. 20, ECF No. 53 attach. 3.  Registration of copyright for the BIG CASE commercial is sufficient to allow an infringement claim based on the copying of material, either newly added or derived from prior works by MML, Commercial Pro, and their principals, Salamone and Olender.  See Indep. Servs. Orgs. Antitrust Litig., 964 F. Supp. at 1473.  This includes the following elements of the MML BIG CASE commercial: The first three spoken lines of the commercial ("Were you in an auto accident? Injured due to someone else's fault? You deserve the maximum compensation for your injuries."); the gong sound effect; the tagline or slogan "you deserve justice, now demand it"; and the closing phrase, "right now."  See Pl.'s Mem. in Opp'n Ex. 2, at 33-34, ECF No. 45 attach. 2.

The words "BIG CASE," "BIG CASES," "EVERY-SINGLE-DAY," and the instruction to call the vanity telephone number "1-888-BIG-CASE" are present in both the BIGCASE script and the MML BIG CASE commer-

cial.  The lines surrounding these words are similarly structured, but they reflect different word choices and additional material not found in Parker's BIGCASE script.[9]  As noted above, to be copyrightable, a derivative work need only have "a faint trace of 'originality' and . . . provide[] a 'distinguishable variation.'" M. Kramer Mfg., 783 F.2d at 438.  The variation between Parker's BIGCASE script and MML's BIG CASE commercial with respect to these elements meets this originality requirement, conferring copyright protection upon these lines as well.  Of course, this copyright protection is "thin, extending only to the incremental original expression contributed by the author of the derivative work." Schrock, 586 F.3d at 521 (citing 17 U.S.C. § 103(b)).[10]  No other elements original to Parker's BIGCASE script are reproduced without transformation in the MML BIG CASE commercial.

---

[9] MML's BIG CASE commercial also omits the "Don't take chances" line from Parker's BIGCASE script.

[10] The Court further notes that the terms "BIG CASE," "BIG CASES," and "1-888-BIG-CASE" are not protectable in their own right, as it is well settled that "[b]rand names, trade names, slogans, and other short phrases or expressions cannot be copyrighted, even if they are distinctively arranged or printed." Alberto-Culver Co. v. Andrea Dumon, Inc., 466 F.2d 705, 710 (7th Cir. 1972) (quoting Kitchens of Sara Lee, Inc. v. Nifty Foods Corp., 266 F.2d 541, 544 (2d Cir. 1959)), cited with approval in Takeall, 1993 WL 509876, at *8; see also 37 C.F.R. § 202.1(a) ("Words and short phrases such as names, titles, and slogans" are not copyrightable," nor are "mere variations of typographic ornamentation, lettering or coloring."). The phrase "EVERY-SINGLE-DAY" may be a closer question, but for the purpose of these summary judgment motions, the Court will assume that this short phrase is a protectable element as to ILM and purely derivative (and not a protected element) as to MML.

ILM suggests that all the remaining elements of the MML BIG CASE commercial are unprotectable scenes a faire, which must be "stripped away" before the Court engages in a substantial similarity analysis.

> [A]s a general rule, copyright law does "not protect 'scenes a faire,' i.e., sequences of events that necessarily result from the choice of a setting or situation." Put another way, scenes a faire are "incidents, characters, or settings which, as a practical matter, are indispensable or standard in the treatment of a given topic."

Eaton, 972 F. Supp. at 1029 (quoting Sinicola v. Warner Bros., Inc., 948 F. Supp. 1176, 1184 (E.D.N.Y. 1996), and Walker v. Time Life Films, Inc., 615 F. Supp. 430, 436 (S.D.N.Y.), aff'd, 784 F.2d 44 (2d Cir. 1985)); see also Computer Assocs. Int'l, Inc. v. Altai, Inc., 982 F.2d 693, 715 (2d Cir. 1992) (scenes a faire include elements of a work that are "obvious," or that "follow naturally from the work's theme rather than from the author's creativity") (quoting 3 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 13.03[F][3], at 13-65).

But ILM misconceives the nature of the scenes a faire doctrine. Under the scenes a faire doctrine, certain staple themes of lawyer advertising may be non-protectable because they are "obvious" or indispensable to the composition of a television advertisement promoting the services of a personal injury lawyer. Much like a car wax commercial using "hackneyed ideas" like "polishing up old cars, washing the polished cars, [and] claiming the support of lab

tests," a commercial promoting the services of a personal injury lawyer may be expected to include a baritone spokesperson (perhaps a celebrity) on a darkened set, a serious tone, a common narrative structure,[11] and an imperative to call a memorable vanity number, among other stock elements.  See Reed-Union Corp., 77 F.3d at 913-14.  Application of the *scenes a faire* doctrine permits ILM and MML, and their respective clients, to broadcast commercials using these same stock themes and devices without fear of copyright in-fringement.  See id.  "But each expression of a theme can claim protection to the extent it differs from its predecessors. '[T]here will typically be expression in the treatment of stock scenes, and . . . it will be a rare work that consists entirely of *scènes à faire.*'"  Id. (quoting William F. Patry, 1 Copyright Law & Practice 338 (1994)).  Under the *scenes a faire* doctrine, ILM may be privileged to utilize similar stock elements, but it is not per-mitted to copy the precise, protected expression of those stock el-ements as used in a competitor's commercial.  See generally id. (discussing copyright protection of television commercials with *scenes a faire* elements); cf. Salinger v. Random House, Inc., 811 F.2d 90, 98 (2d Cir. 1987) ("[T]hough the 'ordinary' phrase may be quoted without fear of infringement, a copier may not quote or par-

---

[11] Something to the effect of: "Are you a personal injury vic-tim? Do you want money compensation? You need a lawyer with certain attributes.  So-and-so lawyers have those attributes.  Don't delay, call now.  Here's the number.  Here's our slogan.  Here's the num-ber again.  Call now."

aphrase the sequence of creative expression that includes such a phrase."). Notwithstanding the reliance of MML's BIG CASE commercial on certain stock elements, MML demonstrates copying by ILM of the precise, protected expression of these stock elements as used in the MML BIG CASE commercial, not just the use of similar themes or settings that might be properly disregarded as scenes a faire.

With respect to the Court's intrinsic evaluation of the two works, the Court notes that

> The substantial similarity test presents a difficult and unique task for the courts, for, in making the substantial similarity determination for the purposes of summary judgment, courts are required to do more than apply rules of law to undisputed facts. Instead, courts must examine and compare the works in question and determine whether reasonable jurors could differ in concluding that the similarity must be the result of copying.

Ganz, 834 F. Supp. at 901. The Court must "appraise whether the 'total concept and feel' of [ILM's BIG CASE commercial] resembles that of [MML's BIG CASE commercial], as measured by the perception of an ordinary observer, namely, that of a television viewing person." Eaton, 972 F. Supp. at 1026. As noted above, typically, whether the two works are substantially similar is "largely a matter of fact and thus not appropriate for the Court's disposition on cross-motions for summary judgment." See X-IT Prods., 155 F. Supp. 2d at 614.

But this is not the typical case. Upon viewing the two commercials side-by-side, as they are presented in Defendant's Exhibit

17, one is struck by the similitude between the two commercials. Aside from the substitution of Corbin Bernsen for Robert Vaughn, they are virtually identical.   Both the spoken words and the on-screen graphics of the ILM commercial echo the words and graphics of the MML commercial, almost word for word.   Without close study, the minor differences in both spoken words and on-screen graphics are largely imperceptible.[12]   The "total concept and feel" of the ILM BIG CASE commercial indeed resembles that of the MML BIG CASE commercial.   The Court finds that reasonable jurors would not dif-fer in concluding that the overall appearance of these works are substantially similar.   See Ganz, 834 F. Supp. at 899-900.

Accordingly, the Court will recommend that MML's motion for partial summary judgment be granted with respect to its copyright infringement claim against ILM, that ILM's motion for partial sum-mary judgment be denied with respect to the same, and that judgment be entered in favor of the defendant with respect to Count I of de-fendant MML's Counterclaim against plaintiff ILM.

## 2. ILM's BIGCASE Script

In Count IV of its Amended Complaint against MML, ILM asserts that MML's BIG CASE commercials, as produced for licensees other than PWA, infringe on ILM's copyright in the BIGCASE script com-

---

[12] The most striking difference, if it can be called "strik-ing," is the correction of a grammatical error, replacing the word "which" in "you need a law firm which handles big cases" with the word "that."   The other differences became apparent to the Court only upon subsequent, more detailed review.

posed by Jerry Parker on January 24, 2009.  Both parties move for summary judgment with respect to this claim.

MML contends that ILM does not possess a valid copyright in the BIGCASE script because it is a derivative work, drawn from prior MML commercials, the creation of which was not authorized.  The Court notes that this characterization is, at best, dubious, given the provisions of the Licensing and Servicing Agreement that permit the licensee, PWA, to request customized modifications to the television advertisements prepared by MML, and given Rick Heideman's specific request that Jerry Parker send him an e-mail providing his suggestions for the BIG CASE commercial that was being prepared by MML.  But in light of the Court's finding above that the Agreement contained an unlimited irrevocable implied nonexclusive license with respect to the BIGCASE script, the validity of ILM's copyright in the BIGCASE script is immaterial.  Because MML possessed an unlimited irrevocable implied nonexclusive license to use the BIGCASE script material, the BIG CASE commercials it produced for other law firm licensees does not, as a matter of law, infringe upon ILM's copyright in the BIGCASE script, such as it is.

Accordingly, the Court will recommend that MML's motion for partial summary judgment be granted with respect to ILM's copyright infringement claim against MML, that ILM's motion for partial summary judgment be denied with respect to the same, and that judgment

be entered in favor of the defendant with respect to Count IV of plaintiff ILM's Amended Complaint against defendant MML.

## B. Trademark and Unfair Competition Claims

A plaintiff asserting claims of trademark infringement and unfair competition under Sections 32 and 43(a) of the Lanham Act must prove that: (1) the plaintiff possesses a valid and protectable mark; (2) the defendant used the mark; (3) the defendant's use of the mark occurred in commerce; (4) the defendant used the mark in connection with the sale, offering for sale, distribution, or advertising of goods or services; and (5) the defendant used the mark in a manner likely to confuse consumers as to the source or origin of goods or services.  See 15 U.S.C. § 1114(1)(a), 1125(a); George & Co. LLC v. Imagination Entm't Ltd., 575 F.3d 383, 393 (4th Cir. 2009); People for the Ethical Treatment of Animals v. Doughney, 263 F.3d 359, 364 (4th Cir. 2001); Rosetta Stone Ltd. v. Google Inc., 730 F. Supp. 2d 531, 540 (E.D. Va. 2010).[13]

"Likelihood of confusion exists if 'the defendant's actual practice is likely to produce confusion in the minds of consumers

---

[13] The Court notes that both parties have set out separate counts of unfair competition and false designation under Section 43(a) of the Lanham Act.  "[F]alse designation is simply a species of unfair competition."  Champions Golf Club, Inc. v. The Champions Golf Club, Inc., 78 F.3d 1111, 1123 (6th Cir. 1996).  The very same elements must be satisfied to prove either unfair competition or false designation.  See Va. Polytechnic Inst. & State Univ. v. Hokie Real Estate, Inc., No. 7:10CV00466, 2011 WL 926862, at *2 (W.D. Va. Mar. 15, 2011) (citing Doughney with respect to a false designation claim).

about the origin of the goods or services in question.'" CareFirst
of Md., Inc. v. First Care, P.C., 434 F.3d 263, 267 (4th Cir. 2006)
(quoting KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.,
543 U.S. 111, 117 (2004)).  A court must "look to how the two par-
ties actually use their marks in the marketplace to determine
whether the defendant's use is likely to cause confusion."  Id.
(citing What-A-Burger of Va., Inc. v. Whataburger, Inc., 357 F.3d
441, 450 (4th Cir. 2004)).

    To determine if a likelihood of confusion exists, the Court
must consider the following nine factors:

> (1) the strength or distinctiveness of the plain-
> tiff's mark as actually used in the marketplace;
> (2) the similarity of the two marks to consumers;
> (3) the similarity of the goods or services that
> the marks identify; (4) the similarity of the fa-
> cilities used by the markholders; (5) the similari-
> ty of advertising used by the markholders; (6) the
> defendant's intent; (7) actual confusion; (8) the
> quality of the defendant's product; and (9) the so-
> phistication of the consuming public.

George & Co., 575 F.3d at 393.  Not all of these factors are rele-
vant or weighed equally, but evidence of actual confusion is "often
paramount" in the likelihood of confusion analysis.  Id. (quoting
Lyon P'ship, 243 F.23d at 804); CareFirst, 434 F.3d at 268 (same).[14]

---

[14] Both parties assert common law claims of trademark infringe-
ment and unfair competition.  ILM expressly alleges its common law
claims under the law of Virginia, but it does not specify where the
alleged wrongful conduct occurred.  ILM's common law claims are
based on allegedly infringing television commercials produced by
MML for a number of different law firms, but ILM's pleadings and
motion papers do not specify where these advertisements were broad-

- 36 -

### 1. The BIGCASE, BIGCASE.COM, and 1-888-BIG-CASE Marks

ILM moves for summary judgment with respect to all three of its BIGCASE service marks.  Meanwhile, MML seeks summary judgment with respect to the BIGCASE.COM and 1-888-BIG-CASE marks only, conceding the existence of a factual dispute with respect to ILM's BIGCASE mark.

---

cast.  The Court notes that one of the transcribed advertisements appears to reference Albuquerque, New Mexico, and another was produced on behalf of Kalfus & Nachman, a Norfolk, Virginia, law firm well-known to the Court.

MML does not specify the state whose law governs or where the alleged wrongful conduct occurred, but it has submitted a DVD containing a video recording of an allegedly infringing television commercial produced by ILM on behalf of PWA for broadcast in the New York media market.  Based on the geographical limits of the Licensing and Servicing Agreement between MML and PWA, the Court infers that the ILM television ad similarly ran on various television stations in the New York media market, which includes parts of the states of New York, New Jersey, Pennsylvania, and Connecticut.  There is nothing in the record on summary judgment to suggest that ILM prepared television advertisements for PWA or any other clients outside of the New York area which contained the YOU DESERVE JUSTICE NOW DEMAND IT mark.

Regardless of which states' laws properly govern the parties' common law claims, the elements for common law infringement and unfair competition in each of these states mirror those of the Lanham Act claims.  See Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., 43 F.3d 922, 930 n.10 (4th Cir. 1995) (Virginia); Thoip v. Walt Disney Co., 736 F. Supp. 2d 689, 706 (S.D.N.Y. 2010) (New York); Scott Fetzer Co. v. Gehring, 288 F. Supp. 2d 696, 703 (E.D. Pa. 2003) (Pennsylvania); J & J Snack Foods, Corp. v. Earthgrains Co., 220 F. Supp. 2d 358, 374 (D.N.J. 2002) (New Jersey); Country Floors, Inc. v. Mizak, No. 3:91-cv-628, 1993 WL 566217, at *6 (D. Conn. June 16, 1993) (Connecticut); Jordache Enters., Inc. v. Hogg Wyld, Ltd., 625 F. Supp. 48, 52 (D.N.M. 1985) (New Mexico).  Accordingly, the Court's findings with respect to the parties' Lanham Act claims are equally applicable to the parties' common law claims.

### a. **The BIGCASE.COM Mark**

Both parties move for summary judgment on ILM's Lanham Act claims with respect to the BIGCASE.COM mark. At the outset, the Court notes that the BIGCASE.COM mark is a composite of ILM's BIG-CASE mark plus the ".com" top level domain name ("TLD"). Although the addition of the ".com" TLD typically adds nothing of source-identifying significance, "[t]he law requires that a mark be 'considered in its entirety.'" In re Oppedahl & Larson LLP, 373 F.3d 1171, 1174, 1177 (Fed. Cir. 2004) (quoting Estate of P.D. Beckwith, Inc. v. Comm'r of Patents, 252 U.S. 538, 543 (1920)).

To establish a claim of trademark infringement or unfair competition under the Lanham Act, a markholder must prove that it possesses a valid and protectable mark. George & Co., 575 F.3d at 393. The Fourth Circuit has previously held that "'[e]ven though a word, name, symbol, device, or a combination of words [a slogan] may be used in the sale or advertising of services or on or in connection with goods' it is not protectable as a trademark 'unless it is used as a mark.'" Microstrategy Inc. v. Motorola, Inc., 245 F.3d 335, 343 (4th Cir. 2001) (quoting In re Morganroth, 208 U.S.P.Q. 284, 287 (T.T.A.B. 1980)) (alterations and emphasis in original).

ILM has neither submitted nor cited any evidence that demonstrates ILM's use of BIGCASE.COM as a mark. The Court notes that ILM attached a printed copy of its website as Exhibit B to its

Amended Complaint, which contains the only use of BIGCASE.COM by ILM that the Court was able to locate in the record.[15]  See Fed. R. Civ. P. 56(c)(3).  The website appears to have marketed ILM's BIG-CASE legal marketing program to prospective law firm clients.  The BIGCASE mark appears prominently throughout the website, as repre-sented by Exhibit B to the Amended Complaint.  But the only refer-ence to BIGCASE.COM is an inconspicuous and small-type reference to www.BIGCASE.com on the website's contact information page.  See Am. Compl. Ex. B, ECF No. 7 attach. 2, at 6 ("Speak with Brien Johnson our BIGCASE National Sales Manager Today! . . . On-line: www.BIGCASE.com").  While BIGCASE.COM may be capable of functioning as a mark if used in an appropriate and sufficiently distinctive manner to identify and distinguish ILM's legal marketing services, here it is simply used as a domain name, identifying where on the internet ILM's website appears.  See In re Eilberg, 49 U.S.P.Q.2d 1955 (T.T.A.B. 1998); see also In re Perdue Holdings, Inc., Serial No. 75/547,196, 2001 WL 431492 (T.T.A.B. Apr. 23, 2001).

ILM has failed to submit or identify any evidence to establish that BIGCASE.COM is a valid and protectable mark.  Accordingly, the Court will recommend that MML's motion for partial summary judgment be granted with respect to the BIGCASE.COM mark, that ILM's motion

---

[15] The Court further notes that the www.bigcase.com website is currently defunct, redirecting to www.innovativelegalmarketing.com, which displays a "Site Under Development" notice only.  See http://www.bigcase.com (last visited Feb. 13, 2012).

for partial summary judgment be denied with respect to the same, and that judgment be entered in favor of the defendant with respect to the BIGCASE.COM mark.

### b. The 1-888-BIG-CASE Mark

MML moves for summary judgment on ILM's Lanham Act claims with respect to the 1-888-BIG-CASE mark. At the outset, the Court notes that the 1-888-BIG-CASE mark is a composite of ILM's BIGCASE mark plus the "1-888" toll-free telephone area code. The addition of the "(888)" telephone area code adds nothing of source-identifying significance. In re Page, 51 U.S.P.Q.2d 1660, 1664-65 (T.T.A.B. 1999). Nevertheless, the 1-888-BIG-CASE composite mark must be considered "as a whole" to determine the commercial impression of the mark. In re Dial-A-Mattress Operating Corp., 240 F.3d 1341, 1345-46 (Fed. Cir. 2001).

MML contends that it is entitled to summary judgment because there is no evidence that MML has used the 1-888-BIG-CASE mark in any of its television advertisements other than those prepared for PWA, to whom the vanity number belonged at the time.[16] But "[t]o constitute infringement, it is not necessary that the defendants appropriate the whole of the plaintiff's mark." Gaston's White River Resort v. Rush, 701 F. Supp. 1431, 1438 (W.D. Ark. 1988); Pickle-Rite Co. v. Chicago Pickle Co., 171 F. Supp. 671, 675 (N.D.

---

[16] Unlike the BIGCASE.COM mark, the evidence of record clearly establishes ILM's use of the 1-888-BIG-CASE vanity number as a service mark.

Ill. 1959).  In its motion papers, MML has conceded the existence of a genuine dispute of material fact as to the existence of a likelihood of confusion with respect to ILM's BIGCASE mark.  If MML's use of the words "big case" are potentially infringing as to the BIGCASE mark, it is also potentially infringing as to the 1-888-BIG-CASE mark, the dominant part of which is coextensive with the BIGCASE mark.

Accordingly, the Court will recommend that MML's motion for partial summary judgment be denied with respect to the 1-888-BIG-CASE mark.

### c. **The BIGCASE and 1-888-BIG-CASE Marks**

ILM moves for summary judgment on its Lanham Act claims with respect to the BIGCASE and 1-888-BIG-CASE marks.  At the outset, the Court notes that ILM has submitted or cited very limited evidence with respect to MML's alleged infringing use of the BIGCASE and 1-888-BIG-CASE marks.  In support of its motion, ILM has submitted typed transcripts of thirteen television commercials apparently produced by MML for eight of its law firm clients.  Pl.'s Mem. in Supp. Exs. 6-13, ECF No. 43 attachs. 6-13.  Each of these commercials includes the spoken words "big case" or "big cases," generally in the middle of the audio transcription provided.  In each instance, the words are capitalized, presumably by the court reporting service at the request of ILM.  No documentation representing the visual component of these advertisements has been sub-

mitted or identified in the record, and there is nothing to suggest that the words "big case" or "big cases" are emphasized or otherwise distinguished from any of the other words spoken in the commercials.

The evidence of record on summary judgment, particularly when viewed in the light most favorable to the nonmovant, does not suggest that MML has used the words "big case" or "big cases" as a mark or "attention getting symbol," as opposed to using these words in a merely descriptive sense.  See WCVB-TV v. Boston Athletic Ass'n, 926 F.2d 42, 46 (1st Cir. 1991) (Breyer, J.); see also Scott Fetzer Co. v. House of Vacuums Inc., 381 F.3d 477, 485 (5th Cir. 2004) ("Prominent and pervasive use of a mark will suggest affiliation, but mere reference to a marked product will not.").  The only evidence submitted or cited by the parties on summary judgment that demonstrates the use of the words "big case" as a mark are copies of the BIG CASE commercials produced for PWA by MML and ILM.

"The burden of production imposed by Rule 56 requires the moving party to make a prima facie showing that it is entitled to summary judgment."  Celotex Corp. v. Catrett, 477 U.S. 317, 331 (1986).  ILM has failed to meet that burden with respect to its Lanham Act claims.  Accordingly, the Court will recommend that ILM's motion for partial summary judgment be denied with respect to the BIGCASE and 1-888-BIG-CASE marks.

## 2. **The YOU DESERVE JUSTICE NOW DEMAND IT Mark**

MML moves for summary judgment with respect to all of its Lanham Act and common law claims concerning the service mark, YOU DESERVE JUSTICE NOW DEMAND IT. Meanwhile, ILM seeks summary judgment only with respect to Count II of the Amended Counterclaim, challenging MML's standing to assert a claim under Section 32(1) of the Lanham Act.

### a. **MML's Standing Under Section 32(1) of the Lanham Act**

ILM moves for summary judgment on the ground that MML does not possess a valid and protectable mark with respect to Count II of MML's Amended Counterclaim (ECF No. 22), which alleges infringement of a registered mark, in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).[17]  See generally George & Co., 575 F.3d at 393 ("To establish trademark infringement, a plaintiff must prove that it owns a valid and protectable mark . . . ."). Relying on DEP Corp. v. Interstate Cigar Co., 622 F.2d 621, 623 (2d Cir. 1980), ILM contends that MML lacks standing to assert a Section 32(1) claim because it is not the "registrant" of the mark or the registrant's "legal representatives, predecessors, successors and assigns." See 11 U.S.C. §§ 1114(1), 1127.

ILM's argument is not well taken. ILM is correct that the registrant on record with the PTO for the mark YOU DESERVE JUSTICE

---

[17] The remainder of MML's trademark and unfair competition claims arise under Section 43(a) of the Lanham Act, which pertains to unregistered marks.

NOW DEMAND IT is Commercial Pro, Inc., an affiliate of MML.  But MML is an exclusive licensee of this mark and other intellectual property held by Commercial Pro.  In Shoney's Inc. v. Schoenbaum, 686 F. Supp. 554 (E.D. Va. 1988), aff'd, 894 F.2d 92 (4th Cir. 1990), this Court found that a similarly situated exclusive licensee had standing to sue for infringement under Section 32(1).  Id. at 563.  Moreover, this finding was entirely consistent with DEP, where the plaintiff had no contractual relationship at all with the markholder.  See id.; DEP Corp., 62 F.2d at 623.

Accordingly, the Court finds that MML, pursuant to an exclusive license granted by the registrant, has standing to assert a claim of infringement under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), with respect to the registered mark YOU DESERVE JUSTICE NOW DEMAND IT.  The Court therefore will recommend that ILM's motion for partial summary judgment be denied with respect to Count II of the Amended Counterclaim.

### b. Use as a Service Mark

As noted above, a mark is not entitled to trademark protection unless it is actually used as a mark.  See Microstrategy, 245 F.3d at 343.  ILM suggests that MML has used the mark YOU DESERVE JUSTICE NOW DEMAND IT as nothing more than one of several recurring lines in its television commercial scripts.  The Court notes that the PTO's registration of MML's mark confers a presumption of validity upon the mark.  Pizzeria Uno Corp. v. Temple, 747 F.2d 1522,

1529 (4th Cir. 1984).  ILM has submitted no evidence to rebut the presumption.  Moreover, in response to ILM's position, MML has provided additional samples of this mark's use as such, both on the internet and as a spoken line in television commercials.  Based on the unrebutted presumption, as well as the additional evidence submitted by MML, the Court finds that MML has used the mark YOU DESERVE JUSTICE NOW DEMAND IT as a service mark.

### c. Likelihood of Confusion

The parties do not dispute that ILM has used the YOU DESERVE JUSTICE NOW DEMAND IT mark in commerce and in connection with the sale, offering for sale, or advertising of services.  The Court must consider the nine prescribed factors to determine the existence of a likelihood of confusion.

### i. Strength of the YOU DESERVE JUSTICE NOW DEMAND IT Mark

The first factor requires the Court to consider the strength of the mark.  "[T]he stronger the mark, the greater the likelihood that consumers will be confused by competing uses of the mark." George & Co., 575 F.3d at 393.  "The 'strength' of the trademark is evaluated in terms of its conceptual strength and commercial strength."  CareFirst, 434 F.3d at 269.

> A mark's conceptual strength is determined in part
> by its placement into one of four categories of
> distinctiveness: (1) generic; (2) descriptive; (3)
> suggestive; or (4) arbitrary or fanciful.  A gener-
> ic mark describes a [service] in its entirety, and
> therefore, "neither signifies the source of goods
> nor distinguishes the particular product from other

> products on the market." Unlike distinctive marks,
> a generic mark is never entitled to trademark pro-
> tection. . . . Fanciful marks, which are inherent-
> ly distinctive, typically involve made-up words
> created for the sole purpose of serving as a trade-
> mark. Arbitrary marks, which are also inherently
> distinctive, typically involve common words that
> have no connection with the actual [ser-
> vice] . . . . Suggestive marks, which are also in-
> herently distinctive, do not describe a product's
> features but merely suggests them. In other words,
> the exercise of some imagination is required to as-
> sociate a suggestive mark with the product. . . .
> Descriptive marks define a particular characteris-
> tic of the product in a way that does not require
> any exercise of the imagination. . . . Descriptive
> marks are not inherently distinctive; rather, they
> require a showing of secondary meaning before they
> receive trademark protection. . . .

George & Co., 575 F.3d at 393-94 (citations omitted).

In this case, the PTO registered MML's mark, YOU DESERVE JUS-

TICE NOW DEMAND IT, without requiring proof of a secondary meaning.

The Fourth Circuit has held that the PTO's "decision to register a

mark, without requiring evidence of secondary meaning is 'powerful

evidence that the registered mark is suggestive and not merely de-

scriptive.'" U.S. Search, LLC v. US Search.Com Inc., 300 F.3d 517,

524 (4th Cir. 2002) (quoting RFE Indus., Inc. v. SPM Corp., 105

F.3d 923, 926 (4th Cir. 1997)). ILM neither submits nor cites any

evidence to the contrary.

The determination of the mark's distinctiveness is just the

first step of the inquiry. The mark's commercial strength must al-

so be evaluated based on six factors:

> (1) [MML's and its licensees'] advertising expendi-
> tures; (2) consumer studies linking the mark to a
> source; (3) [MML's and its licensees'] record of
> sales success; (4) unsolicited media coverage of
> [MML's and its licensees'] business; (5) attempts
> to plagiarize the mark; and (6) the length of ex-
> clusivity of [MML's] use of the mark.

George & Co., 575 F.3d at 395.  Neither party submits any evidence with respect to the commercial strength of the mark YOU DESERVE JUSTICE NOW DEMAND IT, and the Court must therefore conclude that the mark is commercially weak.

Because the "strength of a mark ultimately depends on the de-gree to which the designation is associated by prospective purchas-ers with a particular source," the absence of any meaningful evi-dence of commercial strength renders the mark weak for the purposes of the strength of mark analysis.  See id. at 396.  As a result, in the context of this summary judgment motion, this factor weighs against a likelihood of confusion, notwithstanding the mark's dis-tinctiveness.

### ii. Similarity of the Marks to Consumers

The second factor requires the Court to consider how similar the two marks are to one another, from the perspective of the con-sumer.  In this case, the marks used by MML and ILM are not merely similar, but identical.  MML and ILM, and their respective licen-sees, have used identical language to sell virtually identical le-gal services to the television viewing public.  See Wynn Oil Co. v.

- 47 -

Thomas, 839 F.2d 1183, 1190-91 (6th Cir. 1988).  This factor weighs heavily in favor of a likelihood of confusion.

### iii. Similarity of Services That the Marks Identify

The third factor requires the Court to consider the similarity of the goods or services identified by the marks.  "[T]he goods [or services] in question need not be identical or in direct competition with each other."  George & Co., 575 F.3d at 397 (citing CAE, Inc. v. Clean Air Eng'g, Inc., 267 F.3d 660, 679 (7th Cir. 2001).  But in this case, the services identified by the YOU DESERVE JUSTICE NOW DEMAND IT mark are in fact virtually identical, and in some markets, MML's and ILM's law firm licensees may indeed be in direct competition——MML and ILM certainly are.  This factor weighs heavily in favor of a likelihood of confusion.

### iv. Similarity of the Facilities Used by the Markholders

The fourth factor requires the Court to consider the similarity between the parties' facilities and trade channels.  Teaching Co. Ltd. P'Ship v. Unapix Entm't, Inc., 87 F. Supp. 2d 567, 582 (E.D. Va. 2000).  MML and ILM use the same trade channels.  Their respective business models are virtually identical.  Both produce television advertisements for lawyers and law firms in various markets, some of them overlapping, and both negotiate and manage the placement of these television advertisements on television stations within their respective clients' media markets.  They promote the same legal marketing services to similarly situated lawyers and law

firms, and in some markets, their television commercials promote the same clients' legal services on the same television stations. This factor weighs in favor of a likelihood of confusion.

### v. **Similarity of Advertising Used by the Markholders**

The fifth factor requires the Court to consider the similarity of the parties' advertising. Id. In comparing advertising, the Court looks "at a variety of factors: the media used, the geographic areas in which advertising occurs, the appearance of the advertisements, and the content of the advertisements." CareFirst, 434 F.3d at 273. Both parties produce and place legal service advertisements on behalf of their lawyer and law firm clients on local broadcast television stations. The parties produce and place television advertisements on behalf of their clients in many of the same markets, including the Hampton Roads market where this Court is situated. Even setting aside the virtually identical BIG CASE commercial addressed by the parties' respective copyright claims, the television advertisements the parties produce for their respective licensees are remarkably similar in form and content, utilizing celebrity spokespersons, similar narrative structure, and vanity phone numbers suggestive of litigation. This factor weighs heavily in favor of a likelihood of confusion.

### vi. **ILM's Intent**

The sixth factor requires the Court to consider the defendant's intent—whether the junior user intended to capitalize on the

good will associated with the senior user's mark.   See id.
"[W]here there is proof of actual copying, as in this case, the
Court presumes that the newcomer (here, [ILM]) intended to confuse
the [viewing] public."   See X-IT Prods., 155 F. Supp. 2d at 624.
This factor weighs in favor of a likelihood of confusion.

### vii. Actual Confusion

"The seventh and most important factor is actual confusion."
George & Co., 575 F.3d at 398.   MML has submitted no evidence of
actual confusion.   "Although proof of actual confusion is not nec-
essary to show a likelihood of confusion, the absence of any evi-
dence of actual confusion over a substantial period of time . . .
creates a strong inference that there is no likelihood of confu-
sion."   CareFirst, 434 F.3d at 269.   The period of time involved in
this case (under two years) is much less than time period at issue
in CareFirst (nine years).   This factor weighs against a likelihood
of confusion, but not heavily.

### viii. Quality of ILM's Services

The eighth factor is not relevant to this case, as it relates
to "situations involving the production of cheap copies or
knockoffs of a competitor's trademark-protected goods."   See George
& Co., 575 F.3d at 399.

### ix. **Sophistication of the Consuming Public**

The ninth factor likewise is not relevant to this case, as relates to situations where "the relevant market is not the public at-large." See id. at 400.

\*    \*    \*

Examining the nine likelihood of confusion factors, the Court notes that two of the factors do not apply, two of the factors (strength of mark and actual confusion) weigh against a likelihood of confusion, albeit not strongly so, and the remaining five factors weigh in favor of likelihood of confusion, including three that weigh heavily in favor.  Having weighed these factors, the Court finds that the material undisputed facts disclose a likelihood of confusion.  Accordingly, the Court will recommend that MML's motion for partial summary judgment be granted with respect to the YOU DESERVE JUSTICE NOW DEMAND IT mark, and that judgment be entered in favor of the defendant with respect to Counts II, III, IV, V, and VI of the defendant's Amended Counterclaim..

### IV. **RECOMMENDATION**

For the foregoing reasons, the Court recommends that the plaintiff's motion for partial summary judgment (ECF No. 42) be DENIED, and the defendant's motion for partial summary judgment (ECF No. 39) be GRANTED in part and DENIED in part as detailed above. The Court further recommends that judgment be granted to the defendant with respect to all counts of the Amended Counterclaim (ECF

No. 22), with respect to Count IV of the Amended Complaint (ECF No. 7), and with respect to claims concerning the BIGCASE.COM mark asserted in Count I, II, III, V, and VI of the Amended Complaint (ECF No. 7).

## V. **REVIEW PROCEDURE**

By copy of this Report, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedures:

1.   Any party may serve upon the other party and file with the Clerk specific written objections to the foregoing findings and recommendations within 14 days from the date of mailing of this Report to the objecting party, computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three days permitted by Rule 6(d) of said rules.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).

2.   A district judge shall make a de novo determination of those portions of this Report or specified findings or recommendations to which objection is made.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations.  Thomas v. Arn,

474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984);

United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia

February 13, 2012

- 53 -

## <u>Clerk's Mailing Certificate</u>

A copy of the foregoing Report was mailed this date to the

following: *Via ECF*

      Richard H. Ottinger, Esq.
      Dustin M. Paul, Esq.
      Vandeventer Black, L.L.P.
      500 World Trade Center
      Norfolk, VA 23510-1699
          *Counsel for plaintiff Innovative*
          *Legal Marketing, LLC*

      Kristan B. Burch, Esq.


      Kaufman & Canoles, P.C.
      150 West Main Street, Suite 2100
      Norfolk, VA  23510
          *Counsel for defendant Market*
          *Masters-Legal, A Resonance*
          *Company*

      Kathryn A. O'Leary, Esq.
      Gould & Ettenberg, P.C.
      370 Main Street, Suite 1050
      Worcester, MA 01608
          *Counsel for defendant Market*
          *Masters-Legal, A Resonance*
          *Company*

                              Fernando Galindo,
                              Clerk of Court

                    By: _____
                          Deputy Clerk

                          2-13-12