UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division



FILED

MAR 30 2012

CLERK, US DISTRICT COURT
NORFOLK, VA

INNOVATIVE LEGAL MARKETING, LLC,

      Plaintiff,

  v.

                                  ACTION NO. 2:10cv580

MARKET MASTERS-LEGAL, A RESONANCE
COMPANY,

      Defendant.

## OPINION

This matter comes before the court on the cross-motions for partial summary judgment of Innovative Legal Marketing, LLC ("Innovative") and Market Masters-Legal ("Market"). (ECF Nos. 39, 42.) In these motions, Innovative and Market move for summary judgment on various copyright and trademark claims. Innovative claims that Market infringed on its copyright in a script (the "Email Script") and on Innovative's trademarks, BIGCASE.COM, BIGCASE, and 1-888-BIG-CASE. See Am. Compl. (ECF No. 7.) Market claims that Innovative infringed on its copyright to a commercial ("Market's Big Case Commercial") and on its trademark, YOU DESERVE JUSTICE NOW DEMAND IT. See Am. Answer & Am. Countercl. (ECF No. 22.)

The motions for partial summary judgment were referred to United States Magistrate Judge F. Bradford Stillman by Order on

September 21, 2011, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b). (ECF No. 62.) The United States Magistrate Judge heard oral argument on both motions on October 26, 2011, and filed his Report and Recommendation ("R&R") on February 13, 2012. (ECF No. 78.) The Magistrate Judge recommended denying Innovative's motion. The Magistrate Judge recommended denying in part and granting in part Market's motion, specifically recommending that judgment be granted to Market with respect to Innovative's copyright infringement claim, Market's copyright infringement claim, Market's claim for its trademark, YOU DESERVE JUSTICE NOW DEMAND IT, and Innovative's trademark claim for BIGCASE.COM. The Magistrate Judge recommended denying summary judgment as to Innovative's BIGCASE and 1-888-BIG-CASE trademarks. By copy of the R&R, the parties were advised of their right to file written objections thereto. On March 1, 2012, the court received Innovative's Objection to U.S. Magistrate's Report and Recommendation ("Innovative's Obj.") and accompanying memorandum in support. (ECF Nos. 79, 80.) On March 19, 2012, the court received Market's Opposition to Innovative's Objection ("Market's Opp'n to Innovative's Obj."). (ECF No. 81.)

Pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, the court, having reviewed the record in its entirety, shall make a de novo determination of those portions

2

of the Magistrate Judge's R&R to which Innovative has specifically objected. Fed. R. Civ. P. 72(b). The court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to him with instructions. 28 U.S.C. § 636(b)(1).

The court, having examined Innovative's objections and Market's response, and having made de novo findings with respect thereto, **SUSTAINS IN PART** and **OVERRULES IN PART** Innovative's objections. Accordingly, as detailed in this Opinion, Market's Motion for Partial Summary Judgment is **GRANTED** with respect to Market's copyright infringement claim on its Big Case Commercial; Market's infringement claim on its trademark, YOU DESERVE JUSTICE NOW DEMAND IT; and Market's claim of noninfringement of Innovative's trademark, BIGCASE.COM. Market's Motion for Partial Summary Judgment is **DENIED** with respect to Innovative's copyright infringement claim on the Email Script, and as to Innovative's trademark infringement claims on the BIGCASE and 1-888-BIG-CASE marks. Innovative's Motion for Partial Summary Judgment is **GRANTED** as to its claim of a valid copyright in the Email Script and is **DENIED** as to all other claims.

## I.  Background

The court **ADOPTS** the detailed background set forth in the R&R. (See ECF No. 78 at 1-12.) By way of summary, this action

involves various copyright and trademark claims arising out of Market's and Innovative's respective production of television commercials invoking the concept of a "Big Case" and similar phrases. Market agreed to produce a television commercial based on the concept of a "Big Case" for the law firm Parker Waichman Alonso, LLP ("PWA").[1] While Market's Big Case Commercial was in development, Jerry Parker, a PWA attorney, wrote a script for the commercial, the Email Script, which he sent to Market. Market then produced a Big Case Commercial for PWA. Market also produced Big Case Commercials for its other clients. When Market and PWA parted ways, PWA hired Innovative to handle its marketing and assigned Innovative the copyright to the Email Script. Innovative produced its own Big Case Commercial for PWA ("Innovative's Big Case Commercial"). Market claims that Innovative's Big Case Commercial violates Market's copyright in Market's Big Case Commercial. Innovative, in turn, claims that Market infringed Innovative's copyright in the Email Script by producing Big Case Commercials for clients other than PWA. Both parties also assert trademark claims as addressed herein.[2]

---

[1] It is undisputed and immaterial that the original agreement was between Market and Parker & Waichman, LLP, which firm was renamed Parker Waichman Alonso, LLP, when it added a partner. PWA subsequently changed its name to Parker Waichman LLP.

[2] See _infra_ sections III.B. and IV.

## II.  Summary Judgment Standard

Summary judgment under Rule 56 is appropriate when the court, viewing the record as a whole and in the light most favorable to the nonmoving party, finds there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-50 (1986).  A court should grant summary judgment if the nonmoving party, after adequate time for discovery, has failed to establish the existence of an essential element of that party's case, on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

To defeat a motion for summary judgment, the nonmoving party must go beyond the facts alleged in the pleadings, instead relying upon affidavits, depositions, or other evidence to show a genuine issue for trial. See id. at 324.  Conclusory statements, without specific evidentiary support, are insufficient. Causey v. Balog, 162 F.3d 795, 802 (4th Cir. 1998).  Rather, "there must be evidence on which the jury could reasonably find for the plaintiff." Liberty Lobby, 477 U.S. at 252.

When faced with cross-motions for summary judgment, the court must review each motion separately on its own merit to determine whether either of the parties deserves judgment as a

matter of law. <u>Rossignol v. Voorhaar</u>, 316 F.3d 516, 523 (4th Cir. 2003). "When considering each individual motion, the court must take care to resolve all factual disputes and any competing, rational inferences in the light most favorable to the party opposing that motion." <u>Id</u>. (internal quotations marks and citation omitted).

### III. Innovative's Objections

Innovative raises two objections to the R&R. Specifically, Innovative objects to the finding in the R&R that Market had an implied license to use the Email Script, and to the finding that Innovative did not rebut the presumption of validity of Market's, YOU DESERVE JUSTICE NOW DEMAND IT, trademark. Innovative's Obj. 1. For the reasons set forth below, the court **SUSTAINS** Innovative's objection to the finding of an implied license and **OVERRULES** the objection to the finding that Innovative did not rebut the presumption of validity of Market's trademark, YOU DESERVE JUSTICE NOW DEMAND IT.

### A. Implied License Finding

Market claims that Innovative's Big Case Commercial infringed on Market's copyright in Market's Big Case Commercial. Am. Answer & Am. Countercl. 18-19. Innovative claims that Market violated Innovative's copyright in the Email Script by producing Big Case Commercials for clients other than PWA. Am. Compl. 11. The Magistrate Judge recommended granting summary

judgment in favor of Market on both of these claims, relying on the finding that Market had an implied license to use the Email Script. (ECF No. 78 at 19-35.)

Innovative objects to the finding in the R&R that Market had an implied license to use the Email Script. Mem. Supp. Innovative's Objections to U.S. Magistrate's R&R 2 ("Innovative's Mem. Supp. Obj."). (ECF No. 80.) Innovative argues that Market waived the implied license affirmative defense by failing to plead or argue it. Id. at 2. In the alternative, Innovative argues that there are genuine issues of material fact regarding the existence or nonexistence of a license. Id. at 2-7. Market argues that it did not waive the implied license affirmative defense, that a sua sponte grant of summary judgment was appropriate in this case, and that there are no genuine issues of material fact surrounding the implied license. Market's Opp'n to Innovative's Obj.

Failure to assert an affirmative defense results in a binding waiver of that defense, if allowing the defense would result in unfair surprise or prejudice. See Emergency One, Inc. v. Am. Fire Eagle Engine Co., 332 F.3d 264, 270 (4th Cir. 2003); see S. Wallace Edwards & Sons, Inc. v. Cincinnati Ins. Co., 353 F.3d 367, 373 (4th Cir. 2003) (citing Brinkley v. Harbour Recreation Club, 180 F.3d 598 (4th Cir. 1999)). Absent unfair surprise or prejudice, some courts have allowed a party to raise

an affirmative defense for the first time as late as trial, but only where the evidence supporting the defense is introduced without objection. See 5 Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Richard L. Marcus, Federal Practice and Procedure § 1238 (3d ed. 2011) (listing and discussing cases). Where neither party has raised a defense, a sua sponte grant of summary judgment on that ground may still be appropriate "so long as the losing party was on notice that she had to come forward with all of her evidence." Rutecki v. CSX Hotels, Inc., 290 F. App'x 537, 542 (4th Cir. 2008).

Here, Market did not plead the existence of a license to use the Email Script. See Am. Answer & Am. Countercl. Nor did either party mention it at oral argument or in their, cumulatively, well over one hundred pages of summary judgment briefing. As Innovative points out, it has not had the opportunity to depose Market's witnesses or to engage in any other discovery on the question of a license. Notably, this case was filed over fourteen months ago, since which time Market never once mentioned the copyright license issue until responding to Innovative's objections to the R&R. At every turn, Market has instead maintained that Innovative had no copyright in the Email Script and, by implication, that Innovative had nothing to license. Market's decision not to raise the license affirmative defense appears to have been a

8

wholly intentional, tactical decision. Allowing Market to benefit from that defense for purposes of the instant motion would cause unfair surprise and prejudice to Innovative.[3]

Market also contends that a _sua_ _sponte_ grant of summary judgment on the basis of an implied license was appropriate. Market's Opp'n to Innovative's Obj. 5-7. In support, Market argues that Innovative was on notice that the license affirmative defense could be dispositive to summary judgment and that Innovative should have made its arguments and introduced its evidence against that defense. _Id._ But Innovative would have no reason to introduce evidence or argument to rebut an affirmative defense Market had neither pled nor argued. Market has the burden of proof on its affirmative defenses, and it would certainly be odd for Innovative to attempt to disprove that which Market has not sought to prove.

Similarly, Market argues that Innovative was on notice that the copyright implied license issue could be raised because the parties briefed Market's _trademark_ implied license defense. Market's Opp'n to Innovative's Obj. 5-7. However, an implied license in a trademark claim is a different allegation turning

---

[3] Given the chance to develop the factual record and its legal arguments, prejudice to Innovative would likely diminish, which is why the court finds it unlikely, without deciding, that Innovative would be prejudiced by Market's use of the license affirmative defense at trial.

on a different standard.[4]  Compare Doeblers' Pa. Hybrids, Inc. v.
Doebler, 442 F.3d 812, 824 (3d Cir. 2006) (finding that the
existence of an implied license to use a trademark turns on the
conduct of the parties, not their intentions), with Softech
Worldwide, LLC v. Internet Tech. Broad. Corp., 761 F. Supp. 2d
367, 376 (E.D. Va. 2011) (finding that in a copyright case, "the
touchstone [for an implied license] is intent."). Even if the
trademark license issue gave some scant notice to Innovative
about the copyright license issue, Market had conceded that the
trademark license defense should be decided at trial, not
summary judgment.  Market's Mem. Opp'n Pl.'s Mot. Partial Summ.
J. 13 ("Market's Mem. Opp'n") ("The existence of an implied
license agreement vel non is a factual determination that must
be made by a jury.").

Market further contends that the facts giving rise to the
implied license defense are already on the record.  The court,
however, cannot say whether the factual universe is complete on
the question of an implied license because the parties have

---

[4] Market relies on Grunley Walsh U.S., LLC v. Raap, 386 F. App'x
455 (4th Cir. 2010), for the proposition that raising an
argument can put the opposing party on notice that summary
judgment may be decided on an un-raised but similar ground.  But
this is not that case.  First, the court in Grunley asked the
parties about the un-raised affirmative defense at the summary
judgment hearing, which gave them the chance to state their
positions.  Id. at 460.  Further, in Grunley, the un-raised
defense was argued with respect to one party in the moving
papers, but in the instant case the copyright license
affirmative defense was not raised at all.

engaged in no discovery around that issue.[5] Accordingly, Innovative's objection is **SUSTAINED**.

**B.    Sufficiency of Rebuttal of Market's Trademark Claim**

A finding in the R&R was that Innovative had not rebutted the presumption of validity enjoyed by Market's, YOU DESERVE JUSTICE NOW DEMAND IT, trademark.    (ECF No. 78 at 44-45.) Another finding in the R&R was that Innovative had submitted no evidence to rebut that presumption.    Id. at 45.    Innovative objects to these findings, arguing that it submitted evidence sufficient to rebut the presumption and that the Magistrate Judge improperly considered inadmissible evidence.    Innovative's Mem. Supp. Obj. 8-9.    Innovative's arguments are unavailing.

Market responds that Innovative's evidence was insufficient to rebut the presumption in its favor and that all the evidence considered by the Magistrate Judge was admissible.    Market's Opp'n to Innovative's Obj. 12-13.    Market registered the YOU DESERVE JUSTICE NOW DEMAND IT trademark with the Patent and Trademark Office and, therefore, enjoys a presumption of validity.    Market's Mem. Supp. Mot. Summ. J. Ex. 2 (Patent and Trademark Office registration of YOU DESERVE JUSTICE NOW DEMAND IT) (ECF No. 40.); see Pizzeria Uno Corp. v. Temple, 747 F.2d

---

[5] Innovative contends, for example, that given the chance to develop the factual record it could show that certain discussions establish that Jerry Parker intended the Email Script to be limited to a specific use. See Innovative's Mem. Supp. Obj. 7. Innovative should have that opportunity.

1522, 1529 (4th Cir. 1984). After a de novo review, the court finds, in accordance with the Magistrate Judge, that Innovative failed to rebut the trademark's presumptive validity and has provided scant, if any, evidence tending to show that Market uses the line, YOU DESERVE JUSTICE NOW DEMAND IT, otherwise than as a mark. Innovative's only exhibit is a commercial in which the spokesperson, William Shatner, says, "You deserve justice, now demand it." See Innovative's Mem. Opp'n Market's Mot. Summ. J. Ex. 3. (ECF No. 45.) But this evidence of one use of the phrase--in a manner that is not obviously other than as a mark-- is simply insufficient to rebut the trademark's presumption of validity.

Innovative also argues that the Magistrate Judge improperly considered the website screenshots attached as exhibits to Market's reply memorandum. Innovative's Mem. Supp. Obj. 8-9. The court disagrees. The consideration of that evidence--even if it was inadmissible, which the court need not decide--is immaterial, as this court makes the same finding without consideration of that evidence. Innovative, not Market, had the burden to rebut the presumption enjoyed by Market's trademark registration, and Innovative failed to provide evidence to do so. Accordingly, Innovative's objection is **OVERRULED**.

## IV. Trademark and Unfair Competition Claims

Having overruled Innovative's objection to the finding in the R&R that it failed to provide evidence sufficient to rebut the presumption of validity enjoyed by Market's trademark, YOU DESERVE JUSTICE NOW DEMAND IT, the court **ADOPTS IN FULL** section III.B of the R&R, which addresses the parties' trademark and unfair competition claims. (ECF No. 78 at 35-51.) Accordingly, the court **GRANTS** Market's Motion for Partial Summary Judgment with respect to Market's infringement claim on its trademark, YOU DESERVE JUSTICE NOW DEMAND IT, and on Market's claim of noninfringement of Innovative's trademark, BIGCASE.COM. Market's Motion for Partial Summary Judgment is **DENIED** with respect to Innovative's BIGCASE and 1-888-BIG-CASE trademarks. Innovative's Motion for Partial Summary Judgment is **DENIED** as to all trademark and unfair competition claims.

## V. Copyright Infringement Standard

The court next considers the cross-motions for summary judgment on both copyright infringement claims. Market claims Innovative's Big Case Commercial infringed the copyright Market holds in Market's Big Case Commercial. Market's Mem. Supp. Mot. Partial Summ. J. 23-24. Innovative in turn claims that Market's Big Case Commercial was based on the Email Script, for which Innovative holds a copyright, and that Market based other Big Case Commercials for other clients on the Email Script without

13

authorization.   Innovative's Mem. Supp. Mot. Summ. J. 14-17.
(ECF No. 43.)   Both parties move for summary judgment on both
claims.

    To establish copyright infringement, a plaintiff must prove
"(1) ownership of a valid copyright, and (2) copying of
constituent elements of the work that are original."   Feist
Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991).
"Only where the copyright holder proves copying is infringement
established.   And copying can be established either directly or
indirectly."   Ganz Bros. Toys v. Midwest Imps. of Cannon Falls,
Inc., 834 F. Supp. 896, 899 (E.D. Va. 1993).   A plaintiff may
prove copying by circumstantial evidence by showing "that the
alleged infringer had access to the work and that the supposed
copy is substantially similar to the author's original work."
Bouchat v. Baltimore Ravens, Inc., 241 F.3d 350, 353-54 (4th
Cir. 2000).   That is, a plaintiff must show (1) access to her
work and (2) substantial similarity.   See id.   A plaintiff
establishes access when she establishes that the defendant had
an opportunity to view or copy her work.   Ganz, 834 F. Supp. at
901.   Proving substantial similarity requires a determination
that the two works are extrinsically and intrinsically similar.
See Lyons P'ship v. Morris Costumes, Inc., 243 F.3d 789, 801
(4th Cir. 2001).

## VI.   Innovative's Email Script

Both parties move for summary judgment on Innovative's claim that Market's subsequent Big Case Commercials--those not produced for PWA[6]--violate Innovative's purported copyright in the Email Script.   Having sustained Innovative's objection to the implied license affirmative defense,[7] it remains to be determined if summary judgment is appropriate as to the cross-motions for summary judgment on this claim.   The court finds that Innovative holds a valid copyright in the Email Script, but that summary judgment is not appropriate at this juncture on Innovative's infringement claim.

### A.   Ownership of a Valid Copyright

The plaintiff must establish both ownership of a valid copyright and copying of constituent elements of the work to establish infringement.   Feist, 499 U.S. at 361.   A certificate of copyright made before or within five years of publication of a work is prima facie evidence of a valid copyright.   17 U.S.C. § 410(c).   That presumption can be rebutted, if the defendant proves the invalidity of the plaintiff's purported copyright.

---

[6] Innovative alleges that Market produced Big Case Commercials for at least eight other law firms.   Innovative's Mem. Supp. Mot. Summ. J. 5-7.   Innovative has also attached transcripts of those commercials. Id. Exs. 6-13.

[7] See supra section III.A.

See Harvester, Inc. v. Rule Joy Trammell + Rubio, LLC, 716 F. Supp. 2d 428, 435 (E.D. Va. 2010).

Innovative holds a certificate of copyright to the Email Script and so has established a presumption of a valid copyright. Innovative's Mem. Supp. Mot. Summ. J. Ex. 4; see 17 U.S.C. § 410(c). Market argues, however, that the text of the Licensing and Service Agreement between Market and PWA ("the Agreement") forecloses the possibility of a copyright and that the Email Script was at most an unauthorized derivative of Market's prior works. Market's Mem. Opp'n 16-19. Each of Market's arguments will be addressed in turn.

### 1.   Licensing and Service Agreement

The Agreement between Market and PWA, Innovative's predecessor in rights to the Email Script, does not explicitly address the creation of intellectual property, but it does prohibit PWA from using any commercial similar to Market's Big Case Commercial for two years after termination of the Agreement. Innovative's Mem. Supp. Mot. Summ. J. Ex. 1, Terms and Provisions ¶ 8. Market argues that the two-year use restriction would not make sense, if the parties to the Agreement understood that PWA would acquire intellectual property through its relationship with Market; in other words, if PWA could acquire such rights, Market argues, PWA would not agree to such a restriction. Market's Mem. Opp'n 15.

16

Conversely, Innovative responds that this provision would be superfluous, unless PWA could have acquired intellectual property rights; if PWA could not have created intellectual property, it would have no right the Agreement would need to restrict. Reply in Supp. of Innovative's Mot. Partial Summ. J. 4. Both of these arguments carry a certain logical heft, but neither is ultimately persuasive. What is obvious, in reviewing the terms of the Agreement and the parties' arguments, is that the creation and assignment of intellectual property generated by PWA was simply not addressed.

The Agreement also allows PWA to make suggestions to Market, which Market had the sole right to implement in its commercials for PWA. Innovative's Mem. Supp. Mot. Summ. J. Ex. 1, Terms and Provisions ¶ 5. Market argues that since it had the sole right to implement any modifications, PWA, and through assignment Innovative, could not generate a copyright in any modifications PWA submitted to Market's drafts. Market's Mem. Supp. Mot. Partial Summ. J. 17-18. Market relies on Thomas M. Gilbert Architects, P.C. v. Accent Builders & Developers, LLC, a Fourth Circuit case that found that a builder lacked the right to create modifications based on plans submitted to it by an architect. 377 F. App'x 303, 308-09 (4th Cir. 2010). Gilbert Architects and the Agreement, however, are inapposite since the court finds that the Email Script constituted more than a simple

17

modification to one of Market's commercials.  As discussed
below, the Email Script was not a derivation of prior Market
works, much less a mere modification of an advertisement
proposed by Market, for purposes of summary judgment.

###    2.    Whether the Email Script is Derivative Work

Market stresses its argument that the Email Script is
nothing more than a derivative of commercials made by Market.
Market's Mem. Supp. Mot. Partial Summ. J. 15-17.  Market, in its
illustrative chart, shows that almost each line of the Email
Script resembles a line used in at least one prior Market
commercial.  Id. at 16.  The question is whether the Email
Script is "a work based upon one or more preexisting works, such
as . . . [an] abridgment, condensation, or any other form in
which a work may be recast, transformed, or adapted."  17 U.S.C.
§ 101.

Two principles are applicable here.  First, a work may be
derivative "based on" multiple preexisting works.  17 U.S.C.
§ 101.  Second, individual lines and phrases do not receive
copyright protection.  See CMM Cable Rep., Inc. v. Ocean Coast
Props, Inc., 97 F.3d 1504, 1519 (1st Cir. 1996).  That is, the
use of lines and phrases similar to those of a previous work
does not necessarily make the later work derivative, unless the
use of such phrases causes the later work to be "based on" the
prior works.  See id.; see 17 U.S.C. § 101.  Market's reliance

on _Jarvis v. K2, Inc._, 482 F.3d 526, 531 (9th Cir. 2007), is misguided. _Jarvis_ held that the manipulation and aggregation of several photographs, each of which was a copyrightable work on its own, could be considered a derivative work. _See_ _id._ at 531. However, _Jarvis_ does not stand for the proposition that the use of parts of copyrighted works necessarily makes a later work derivative. To be derivative, a work must still be "based on" prior works, not merely incorporate some unprotectable parts from the prior works. _See_ 17 U.S.C. § 101. That the lines in the Email Script are similar to those appearing in prior Market commercials is not enough, on its own, to render the Email Script a derivative work. The Email Script must be "based on" those prior commercials to be derivative. _See_ _id._

     The question, then, is whether the Email Script is based on one or more of Market's works such that it is derivative. _See_ _id._ As Justice Story wrote in _Emmerson v. Davies_,

> in literature, in science and in art, there are, and
> can be, few, if any, things which, in an abstract
> sense, are strictly new and original throughout. Every
> book in literature, science and art, borrows and must
> necessarily borrow, and use much which was well known
> and used before.

8 F. Cas. 615, 619 (C.C.D. Mass. 1845) (No. 4,436). So too with lawyer advertisements. The creative process--including that at issue here--does not proceed through wholesale epiphany but is the slow accretion of new layers to the sediment of human

thought and expression.   This is the sort of relationship the Email Script has to the prior Market commercials.   Market has found, in its great volume of prior commercials, individual lines that are similar to those in the Email Script.   But the Email Script cannot be said to be based on those works any more than it is based on the multitude of other lawyer advertisements that came before it.   For example, the Email Script uses the phrase, "Were you in an auto accident? Injured due to someone else's fault?".   Market had previously created commercials asking if the viewers had been in an accident that was not their fault.   But this resemblance is simply too faint--consisting only of the similarity one would expect between any lawyer advertisement and a carefully selected group of advertisements on the same subject--to justify a finding that the Email Script is derivative.

Finally, Market argues that if the Email Script is not derivative, it is not entitled to copyright protection because it consists only of unoriginal, generic phrases.   Market's Mem. Opp'n 18 (citing CMM, 97 F.3d at 1517).   This argument fails, however, because the aggregation of those phrases, which may be unoriginal on their own, transformed them into something new and deserving of copyright protection.

Innovative holds a valid copyright to the Email Script, and the court **GRANTS** its motion for summary judgment as to that point alone.

### B.   Copying of Original Elements

#### 1.   Access

Once again, to establish the copying of original elements, a plaintiff must show that the defendant had access to the work and that the works are substantially similar. See Bouchat, 241 F.3d at 353-54. It is not contested that Market had access to the Email Script. Jerry Parker sent the Email Script to Market, and Rick Heideman responded that it "look[ed] good at first glance." Innovative's Mem. Supp. Mot. Summ. J. Ex. 3.

### 2.   Substantial Similarity Between the Email Script and Market's Non-PWA Big Case Commercials

Because there is a genuine issue of material fact as to the similarity vel non of the Email Script and Market's non-PWA Big Case Commercials, summary judgment is inappropriate. See Liberty Lobby, 477 U.S. 242 at 248-50. There is simply no way the court can conclude that an ordinary person would necessarily find that the "total concept and feel" of the Email Script resembles each of Market's non-PWA Big Case Commercials. See Eaton, 972 F. Supp. at 1026. There is a great deal of similarity between the Email Script and the Big Case Commercials--with some more so than others--but whether that

21

similarity is substantial requires an aesthetic judgment this court is not prepared to make at this juncture on the evidence before it.[8]

For the reasons stated above, with respect to Innovative's claim of copyright infringement of the Email Script, the court **DENIES** Market's motion and **GRANTS IN PART** and **DENIES IN PART** Innovative's motion.

### VII. Market's Big Case Commercial

Both parties move for summary judgment on Count I of Market's Counterclaim, which alleges that Innovative's Big Case Commercial infringes on Market's copyright in Market's Big Case Commercial. For the reasons stated below, the court finds that Market is entitled to summary judgment on this claim.

### A. Ownership of a Valid Copyright

After a de novo review, the court **ADOPTS** section III.A.1.a of the R&R and the conclusion that Market is the owner of a valid copyright in Market's Big Case Commercial. (See ECF No. 78 at 16-19.) Like the Magistrate Judge, the court finds that Innovative failed to rebut the prima facie evidence established by Market through Commercial Pro's copyright certificate. (See id.)

---

[8] This question is ordinarily left to the jury. See Ganz, 834 F. Supp. at 899-900.

## B.    Copying of Original Elements

### 1.    Access

To establish the copying of original elements, the plaintiff must show the defendant had access to the work and that the works are substantially similar.  See Bouchat, 241 F.3d at 353-54.  The evidence establishes that Innovative had the opportunity to view the Big Case Commercial Market produced for PWA.  (See ECF No. 78 at 19.)  Innovative had the opportunity to access Market's Big Case Commercials through Innovative's interactions with PWA.[9]  Market need not prove that Innovative actually saw Market's Big Case Commercial, but only that it had the opportunity to see the work and that the subsequent material is substantially similar.   See Bouchat, 241 F.3d at 354-55. Innovative's relationship with PWA certainly allows the inference that Innovative had the opportunity to view Market's Big Case Commercial, especially in light of the substantial similarity between the Big Case Commercials.

---

[9] The court also notes that Randy Dinzler, the producer of the Innovative Big Case Commercial, admitted in an August 1, 2011, deposition to having viewed versions of Market's Big Case Commercial created for clients other than PWA.   Market's Mem. Supp. Mot. Partial Summ. J. Ex. 16.  Since those versions of the commercial may infringe on the Email Script, see supra section VI, the court's analysis rests on Innovative's viewing the Big Case Commercial Market created for PWA.

2.     **Substantial Similarity Between Market's Big Case Commercial and Innovative's Big Case Commercial[10]**

The next step is to determine whether Market's Big Case Commercial and Innovative's Big Case Commercial are substantially similar, which requires the court to ask whether they are extrinsically and intrinsically similar.  See <u>Lyons</u>, 243 F.3d at 801.  Market's Big Case Commercial and Innovative's Big Case Commercial are substantially similar.

### i.  Standard

"Extrinsic" or "objective" inquiry assesses the similarity between the ideas presented in the works, i.e., the "works' objective elements, such as plot, theme, characters, setting, pace, mood, and dialogue." <u>Eaton v. Nat'l Broad. Co.</u>, 972 F. Supp. 1019, 1023 (E.D. Va. 1997) (citations omitted).  However, a court must only ask whether the protectable elements of a work, standing alone, are substantially similar.  See <u>Williams v. Crichton</u>, 84 F.3d 581, 588 (2d Cir. 1996) (quoting <u>Knitwaves, Inc. v. Lollytogs Ltd.</u>, 71 F.3d 996, 1002 (2d Cir. 1995)); <u>see Takeall v. Pepsico, Inc.</u>, 14 F.3d 596, 1993 WL 509876, at *8 (4th Cir. Dec. 8, 1993) (per curiam table decision) ("[E]ven if a work as a whole is copyrightable, copyright protection does

---

[10] As detailed below, this section compares the two Big Case Commercials made for PWA, one made by Market and one by Innovative.  Section VI.B.2, <u>supra</u>, evaluates the substantial similarity <u>vel</u> <u>non</u> between the Email Script and Market's non-PWA Big Case Commercials.

not extend to its component parts that are not."). In a derivative work, only the original works are copyrightable and should be considered. See Schrock v. Learning Curve Int'l, Inc., 586 F.3d 513, 521 (7th Cir. 2009). The Copyright Act defines a "derivative work" as

> a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgment, condensation, or any other form in which a work may be recast, transformed, or adapted. A work consisting of editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship, is a "derivative work."

17 U.S.C. § 101 (2011). A derivative work can still be copyrightable, if it has a trace of originality and provides a distinguishable variation. See M. Kramer Mfg. Co. v. Andrews, 783 F.2d 421, 438 (4th Cir. 1986).

Intrinsic analysis is a subjective test in which the court must ask "whether reasonable jurors could differ in concluding that the similarity must be the result of copying" after evaluating the "total concept and feel" of the Big Case Commercials. See Eaton, 972 F. Supp. at 1026; see Ganz, 834 F. Supp. at 901. Substantial similarity analysis is "largely a matter of fact"--requiring a perceptual, aesthetic judgment--and is often inappropriate for summary judgment. See Ganz, 834 F. Supp. at 899-900; see X-IT Prods., L.L.C. v. Walter Kidde Portable Equip., Inc., 155 F. Supp. 2d 577, 612 (E.D. Va. 2001).

## ii. Extrinsic Similarity

Innovative argues that all the elements of Market's Big Case Commercial are derivative of works created prior to Commercial Pro's formation, are derivative of the Email Script, or are unprotectable scenes a faire. Innovative's Mem. Opp'n Market's Mot. Summ. J. 14-15. Innovative's first argument, that certain elements of Market's Big Case  Commercial--the gong sound effect, the trademark YOU DESERVE JUSTICE NOW DEMAND IT, and the phrase "RIGHT NOW"--are derivative of works created prior to the formation of Commercial Pro, is unavailing. Mark Salomone and Edward Olender, the founders of Market and original owners of any rights that predated Market, assigned their rights to Commercial Pro. Market's Reply Mem. Supp. Mot. Partial Summ. J. Ex. 20 ("Market's Reply"). (ECF No. 53.) Commercial Pro is the entity that owns the copyright in all the works created by Market and provides Market with an exclusive worldwide license to use all of those elements. Id. As such, Market has unlimited rights to use those elements, and they should be considered in the substantial similarity analysis.

Innovative next contends that Market's Big Case Commercial is derivative of the Email Script and that the derivative elements should not be considered when evaluating the similarity between the two. Innovative's Mem. Opp'n Market's Mot. Summ. J.

26

14-15. Market, however, contends that no commercial has been made using the Email Script, that the Email Script is not copyrightable, and that, in the alternative, the Email Script was an unauthorized derivative of Market's prior commercials. Market's Mem. Supp. Mot. Partial Summ. J. 2, 14-20.

As discussed above,[11] the court finds that the Email Script was copyrightable and was not derivative of Market's earlier commercials, which leaves the question of whether Market's Big Case Commercial was derivative of the Email Script. The court finds that it was derivative.[12] Market's Big Case Commercial, while it added much to the Email Script, is clearly derivative in that it is a dramatization of the script. See 17 U.S.C. § 101. The first three lines of Market's Big Case Commercial copy the Email Script's language verbatim, and the subsequent lines, while not identical, differ only in their slight restructuring of the Big Case message, the addition of Market's trademark, YOU DESERVE JUSTICE NOW DEMAND IT, and a slight variation to the line delivering the telephone number. Moreover, Jeremy Johnson, an employee of Market, referred to Market's Big Case Commercial as "[t]he ad based upon the script

---

[11] See supra section VI.A.

[12] The court notes that an unauthorized derivative receives no copyright protection. Pickett v. Prince, 207 F.3d 402, 404-07 (7th Cir. 2000). Here, however, the derivative was clearly authorized in that PWA emailed the script to Market with the intent that Market create a derivative work.

from [Jerry Parker]." Innovative's Mem. Supp. Mot. Summ. J. Ex.
21. Market's Big Case Commercial is derivative of the Email
Script, and the court, therefore, must not consider the
derivative elements when evaluating the similarity between
Market's Big Case Commercial and Innovative's Big Case
Commercial.

Though derivative, Market's Big Case Commercial is still
entitled to copyright protection because it has at least a trace
of originality and provides distinguishable variation.  See
Andrews, 783 F.2d at 438.  Indeed, Market's Big Case Commercial
has a great deal of originality.  The audio and visual elements
of Market's Big Case Commercial were original additions; the
Email Script did not provide any guidance as to audio and visual
cues.  For example, Market added the gong sound effect, the text
displays, the spokesperson's pointing, and the beeping and
flashing telephone number.  Additionally, Market modified the
script itself in several ways.  Market added the phrase "RIGHT
NOW" to the end of the advertisement; added its trademark, YOU
DESERVE JUSTICE NOW DEMAND IT; and changed in some ways the
presentation of the "Big Case" theme.  These modifications are
entitled to protection and should be considered when evaluating
the substantial similarity between Market's Big Case Commercial
and Innovative's Big Case Commercial.

Innovative also urges the court to find many of these elements--that the announcer reads the script, the phone number with audio and visual cues, and the spokesman's gesturing--to be unprotectable scenes a faire that should be stripped away for substantial similarity analysis. Innovative's Mem. Supp. Mot. Summ. J. at 18. Copyright law generally does not protect the use of elements that are "obvious" and that "follow naturally from the work's theme," i.e., scenes a faire. See Computer Assocs. Int'l, Inc. v. Altai, Inc., 982 F.2d 693, 715 (2d Cir. 1992) (quoting 3 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 13.03[F][3]).

The court agrees with the Magistrate Judge, however, that Innovative misconceives the nature of the scenes a faire doctrine, which holds that expressions of a theme are entitled to protection to the extent they differ from their predecessors. See Reed-Union Corp. v. Turtle Wax, Inc., 77 F.3d 909, 14 (7th Cir. 1996). That is, authors may not copy verbatim the presentation of another work, including the use of scenes a faire that are not individually protectable. See id. (illustrating the scenes a faire doctrine by explaining that it allows the reproduction of the elements used in Romeo and Juliet but not the direct copying of their presentation in, e.g., West Side Story). Market's Big Case Commercial uniquely arranged the stock elements often found in lawyer advertisements--as

29

explained in the R&R--even though it is "a commercial promoting the services of a personal injury lawyer [that includes] a baritone spokesperson (perhaps a celebrity) on a darkened set, a serious tone, a common narrative, structure, and an imperative to call a memorable vanity number." (ECF No. 78 at 31.) These elements certainly are common, but their presentation by Market was still entitled to protection.

When the court compares the objective elements of the Commercials--even when the derivative elements are removed--the similarity between Market's Big Case Commercial and Innovative's is substantial. See Eaton, 972 F. Supp. at 1023 (stating that extrinsic similarity analysis consists of comparing the objective elements of the works). Market's novel elements consist of the use of a celebrity spokesperson; a dark background with text flashing in the foreground; the spokesperson's standing to the audience's right; the spokesperson's pointing and admonishing the audience with Market's trademark, YOU DESERVE JUSTICE NOW DEMAND IT; the use of a beeping tone at the point the phone number is read; and several modifications to the text conveying the Big Case theme. See Market's Mem. Supp. Mot. Partial Summ. J. Ex. 17 (displaying a side-by-side comparison of the Big Case Commercials). Collectively, these elements form the pacing, setting, and mood of Market's Big Case Commercial. Innovative's Big Case

Commercial employs every one of these elements--even the slight modifications to the Email Script's language surrounding the Big Case theme;[13] the extrinsic similarity between the two Big Case Commercials is manifest.

### iii. Intrinsic Similarity

Moreover, the two Big Case Commercials could hardly be more intrinsically similar.  Any ordinary person would find that the "total concept and feel" of Innovative's Big Case Commercial resembles Market's.   See Eaton, 972 F. Supp. at 1026. Ordinarily this question is left to the jury, but the court finds that even when the elements derived from the script are not considered, the "total concept and feel" of the Big Case Commercials is identical.   See Ganz, 834 F. Supp. at 899-900. Perhaps most notable is the similarity of the style and layout of the text displays; both use a serif font in small caps, which is occasionally traded for a sans serif font for emphasis, and both arrange the text on the screen in the exact same manner. The similarity simply is too striking to have resulted from anything other than copying.

---

[13] Market provides a useful comparison between the language of the Email Script, Market's Big Case Commercial, and Innovative's Big Case Commercial.   Market's Reply Mem. 15.   Notably, Innovative's Big Case Commercial uses all the changes Market's Big Case Commercial made to the Email Script, changing only "which" to "that" in the fourth line.   See id.

For the reasons stated above, the court **GRANTS** Market's motion for partial summary judgment as to its copyright infringement claim on its Big Case Commercial and **DENIES** Innovative's motion with respect to the same.

## VIII.    Judgment

Pursuant to this Opinion, the Clerk shall enter judgment in favor of Market and against Innovative with respect to all counts of the Amended Counterclaim and with respect to the claims concerning the BIGCASE.COM trademark asserted in Counts I, II, III, V, and VI of the Amended Complaint. The Clerk is **DIRECTED** to forward a copy of this Opinion to counsel for all parties.

**IT IS SO ORDERED.**[14]

/s/
Rebecca Beach Smith
Chief
United States District Judge

REBECCA BEACH SMITH
CHIEF UNITED STATES DISTRICT JUDGE

Norfolk, Virginia

March 30 , 2012

---

[14] An Index of this Opinion is attached for reference purposes and made a part hereof.

**INDEX**

I.    Background ................................................. 3

II.   Summary Judgment Standard ................................. 5

III.  Innovative's Objections ................................... 6
  A.    Implied License Finding ................................ 6
  B.    Sufficiency of Rebuttal of Market's Trademark Claim..... 11

IV.  Trademark and Unfair Competition Claims ................. 13

V.   Copyright Infringement Standard ......................... 13

VI.  Innovative's Email Script ............................... 15
  A.    Ownership of a Valid Copyright ........................ 15
  1.  Licensing and Service Agreement ....................... 16
  2.  Whether the Email Script is Derivative Work............ 18
  B.    Copying of Original Elements .......................... 21
  1. Access................................................. 21
  2. Substantial Similarity Between the Email Script and
     Market's Non-PWA Big Case Commercials .................. 21

VII.  Market's Big Case Commercial........................... 22
  A.    Ownership of a Valid Copyright ........................ 22
  B.    Copying of Original Elements .......................... 23
  1. Access................................................. 23
  2. Substantial Similarity Between Market's Big Case Commercial
     and Innovative's Big Case Commercial ................... 24

VIII. Judgment .............................................. 32